STATE of Minnesota, Respondent,

v.

Robert Daniel GASSLER, Appellant.

No. C7–92–888.

Supreme Court of Minnesota.

Sept. 3, 1993.

John M. Stuart, State Public Defender, Susan K. Maki, Asst. State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey III, Atty. Gen., John Docherty, Sp. Asst. Atty. Gen., St. Paul, Gaylord A. Saetre, Todd County Atty., Long Prairie, for respondent.

GARDEBRING, Justice.

This is an appeal of a conviction of first-degree murder for which appellant was sentenced to life in prison. Appellant alleges that the trial court erred by ruling that certain impeachment evidence was admissible, by not giving certain instructions to the jury, by allowing the state's closing argument without noting its impropriety to the jury, and by the imposition of a sentence to run consecutive to a prior federal conviction. We affirm.

Dale Yungk was murdered early in the morning of April 14, 1990. His body was found on the side of a rural roadway in Todd County at around 7 a.m. Yungk was shot three times with a shotgun in the head and back, and died from loss of blood. Events leading to Yungk's death began in January 1990.

On the night of January 14, 1990, police officers investigated a suspicious car outside a Roseville catering business, where it was later determined a burglary had been committed. Burglary tools, a sledgehammer, a large knife and a .25 caliber semi-automatic pistol were found in the car, which was driven by appellant with Yungk as the only passenger. Appellant was arrested at the time, but ultimately neither he nor Yungk were charged with the burglary.

At the time of this incident, Yungk was living at the residence of Gordon Beckman. Also living there was Dale Lessard, who testified at trial that appellant, who also lived at Beckman's house sporadically, seemed to be acquainted with James "Rusty" Scott.[1] In late January, Yungk admitted to Lessard that he and appellant had burglarized a business in Roseville. There was also testimony at trial that in late January, appellant was

---

1. James Scott was convicted of the first-degree murder of Dale Yungk in a prior separate trial from appellant's. His conviction was affirmed in *State v. Scott,* 493 N.W.2d 546 (Minn.1992).

seen in Beckman's garage sawing off a shotgun and applying surgical tape to the stock. One witness testified that appellant intended to kill Yungk with the shotgun because he believed Yungk was a "snitch" and because Yungk had not given him his share of the money from the burglary.

On the night of April 13, 1990, a friend of Yungk's attempted to contact him at Beckman's residence. The friend telephoned at around 9 p.m. and Yungk told him to call back. When he called back, Beckman told him that Yungk had left with appellant and Scott. The next morning, Yungk's body was discovered in Todd County.

That same morning, Veronica Yarbough, a close friend of appellant's, went to her mother's house and saw appellant and Scott, who both looked very tired. Appellant told Yarbough that he and Scott had killed Yungk and left his body on the side of the road "to prove a point." Appellant offered Yarbough a spent shot shell as a "souvenir," but then changed his mind.

Another key witness for the state, Ricky Foster, testified that Scott and appellant arrived at his home on April 14, and that appellant had a sawed off shotgun which was wrapped in white surgical tape and which smelled of gunpowder. Foster said that appellant told him that he and Scott had pulled some burglaries in the country and that he had shot someone, although later he claimed to be joking.

Foster's mother, Beverly Munoz, who arrived home several days later, was asked by Scott and appellant to keep a suitcase in her room for them. She opened the suitcase and found the shotgun, ammunition and other items. The next day appellant said he wanted his shotgun back, but when Beverly Munoz directed him to the suitcase, he refused to take the gun away. At the time, appellant mentioned something about someone being murdered and that someone was trying to break into the house. Mrs. Munoz turned the suitcase and its contents over to the St. Paul Police.

After obtaining the suitcase from the St. Paul police, the Bureau of Criminal Apprehension ("BCA"), which was investigating Yungk's murder, determined that the contents were proceeds of burglaries, with the exception of the shotgun and ammunition. The BCA then asked Beverly Munoz to tape record several phone conversations with appellant in connection with returning the shotgun to him. As a result of these conversations, appellant was arrested by the St. Paul Police. When appellant was interrogated by the BCA, he denied any involvement in Yungk's murder. However, he also indicated that he believed Yungk was a "snitch" and that he would tell the police nothing about Yungk's murder even if he knew who had done it.

At trial, in addition to the circumstantial evidence discussed previously, the state relied on two scientific experts, one who testified regarding the similarities in the ammunition found in the suitcase and that found in Yungk's body, and one who testified on the evidence of the scratches on the shells themselves caused by being fired from the shotgun. The state also called Michael Olson, an inmate in the prison where appellant was held prior to trial. Olson testified that appellant asked him if he knew anyone who would kill Veronica Yarbough, who was testifying for the state.

Appellant called two inmates, who lived with him in the same cell unit. Both disputed Olson's testimony. They testified that because appellant feared that another inmate would fabricate a confession in order to secure better treatment, one or both of the inmates accompanied him at all times. They each testified that appellant made no such remarks to Olson.

Appellant's theory of the case was that other enemies of Yungk had killed him. The jury was exposed to appellant's version of events through the testimony of several witnesses. The tape recording between appellant and Beverly Munoz was played in which appellant denied killing Yungk. Also, BCA agents testified that appellant told them that he did not remember the weekend Yungk was killed, that Yungk was a "snitch" who had "heavyweight" enemies and that he was only trying to acquire a shotgun from the Munoz' to use for hunting.

The first issue we address is whether the trial court erred by admitting evidence of appellant's past crimes for purposes of impeachment. Defense counsel made a pretrial motion to bar admission of appellant's prior convictions for (1) check forgery, (2) possession of a firearm by a felon, (3) attempted second degree murder, and (4) aggravated robbery. The trial court denied the motion and ruled that appellant could be impeached by evidence of all four prior convictions, if he chose to testify. Appellant did not testify. He argues on appeal that it was an abuse of discretion constituting reversible error to admit evidence of any of his prior convictions, with the exception of the one for forgery, and that the trial court's ruling effectively deprived him of his constitutional right to testify in his own behalf.

We first address appellant's contention that the court abused its discretion. The applicable rule is Minn.R.Evid. 609(a), which states:

> **(a) General rule.** For the purpose of attacking the credibility of a witness, evidence that a witness has been convicted of a crime shall be admitted only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect, or (2) involved dishonesty or false statement, regardless of the punishment.

Although the trial court did not specify under which part of the rule appellant's convictions were admissible, appellant's forgery conviction, a *crimen falsi*, clearly falls within Rule 609(a)(2). On the other hand, this court recently held that robbery is not an offense directly involving "dishonesty or false statement." *State v. Ross*, 491 N.W.2d 658, 659 (Minn.1992). As to the crimes of possession of a firearm by a felon and attempted second degree murder, we have not ruled on whether they come within the meaning of Rule 609(a)(2). The general rule was stated in

*State v. Darveaux*, 318 N.W.2d 44 (Minn. 1982), which held that aggravated assault was not a crime involving dishonesty or false statement, where we said that " '[d]ishonesty in this rule refers only to those crimes involving untruthful conduct.' " *Id.* at 48 (quoting the Advisory Committee Comment to Rule 609).

However, even if the remaining convictions did not involve crimes of dishonesty or false statement, they may, of course, be admissible under Rule 609(a)(1). Because we agree with the state's contention that all three convictions are admissible under Rule 609(a)(1), we make no determination as to whether appellant's convictions for possession of a firearm and attempted murder would have been admissible under Rule 609(a)(2).

Rule 609(a)(1) requires two things in order for prior convictions to be admitted to impeach a witness: first, the earlier crime must be punishable by over a year of incarceration and second, the prejudicial effect of the evidence must not outweigh its probative value.[2] To determine whether the probative value of a prior conviction outweighs its prejudicial effect, we use the factors set forth in *State v. Jones*, 271 N.W.2d 534 (Minn.1978): (1) the impeachment value of the prior conviction; (2) the date of the conviction and the defendant's subsequent history; (3) the similarity of the past crime with the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue. *Id.* at 537–38. We have also said that the court should consider whether the admission of the evidence will cause the defendant not to testify. *State v. Bettin*, 295 N.W.2d 542, 546 (Minn.1980) (citing *Gordon v. United States*, 383 F.2d 936 (D.C.Cir.1967), *cert. denied* 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968)).

### (1) Impeachment value

Generally, convictions for violent crimes lack the impeachment value of *crimen*

---

2. Of course under Minn.R.Evid. 609(b) any conviction or release from a conviction that took place more than 10 years prior to trial is only admissible if the court makes a determination "in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." The trial court did not allow admission of any of appellant's convictions that were more than ten years old.

*falsi.* *See e.g., Gordon,* 383 F.2d at 940. However, trial courts have great discretion in determining what prior convictions are admissible under the balancing test of Rule 609(a)(1). *See e.g., State v. Lloyd,* 345 N.W.2d 240, 246 (Minn.1984); *State v. Brouillette,* 286 N.W.2d 702, 707 (Minn.1979). Moreover, the fact that a prior conviction did not directly involve truth or falsity does not mean it has no impeachment value. *Brouillette,* 286 N.W.2d at 707. We have stated that "impeachment by prior crime aids the jury by allowing it 'to see the "whole person" and thus to judge better the truth of his testimony.'" *Id.* (quoting *St. Paul v. DiBucci,* 304 Minn. 97, 100, 229 N.W.2d 507, 508 (1975)).

**(2) Date and subsequent history**

The possession of a firearm conviction occurred in 1990, while the aggravated robbery and attempted murder convictions occurred in 1981. Technically, because all of these convictions occurred within ten years of the instant prosecution, none were "stale" under Rule 609(b). Further, appellant was in prison from the time of his 1981 convictions until June 1989. Consequently, no favorable inference for appellant can be drawn as to the length of time between the earlier convictions and this one. In *State v. Bettin,* 295 N.W.2d at 546, we held that where the defendant's prior conviction occurred four years before and the defendant was in prison during the time between the two offenses, "it would seem that the prior offense had not lost any relevance by the passage of time." *Id.*

**(3) Similarity**

The similarity of the prior convictions with the charged crime is only an issue with the admission of the conviction for attempted murder. Obviously, if the prior conviction is similar to the charged crime, there is a heightened danger that the jury will use the evidence not only for impeachment purposes, but also substantively. *See e.g., State v. Bettin,* 295 N.W.2d at 546; *State v. Lloyd,* 345 N.W.2d 240, 247 (Minn.1984). However, we have upheld a trial court's ruling that allowed the admission of past convictions more similar to the charged crime than the similarity

at issue here. In *State v. Frank,* 364 N.W.2d 398, 399 (Minn.1985), this court upheld the trial court's ruling that, in a trial for first degree criminal sexual assault, two other rape convictions were admissible for impeachment purposes.

**(4) and (5) Importance and credibility of appellant's testimony**

Appellant's version of the facts may be centrally important to the result reached by the jury. If so, this fact would support exclusion of the impeachment evidence if by admitting it, appellant's account of events would not be heard by the jury. *Gordon,* 383 F.2d at 940. However, it is clear from the record that appellant's version was presented to the jury via the testimony of other witnesses. Moreover, no offer of proof was made as to any additional testimony appellant would have added if he had taken the stand. Both these factors support the trial court's decision to admit the evidence for impeachment. *See State v. Lloyd,* 345 N.W.2d at 246. Finally, because appellant's credibility was a main issue in this case, had he testified, there would have been a significant need for the admission of this evidence. *Id.* (citing *Bettin,* 295 N.W.2d at 546).

The trial court is vested with great discretion in this area and we find no reason to overturn its ruling. We believe it important that trial courts are given latitude to make evidentiary determinations. Accordingly, we hold that, under the factors articulated in *Jones,* the trial court did not abuse its discretion in allowing admission of appellant's prior convictions for impeachment purposes.

■ Appellant asserts further that his right to testify in his own defense was violated by the court's admission of his prior convictions. Clearly, this right is protected by both the Due Process Clause of the Federal Constitution and Minnesota law. *Faretta v. California,* 422 U.S. 806, 819, n. 15, 95 S.Ct. 2525, 2544, n. 15, 45 L.Ed.2d 562 (1975); *State v. Rosillo,* 281 N.W.2d 877, 878 (Minn. 1979); Minn.Stat. 611.11 (1992). Here, appellant was not kept from testifying; he made a decision not to testify based on the evidence that would have been admitted had he taken the stand. Appellant argues that

the court's ruling effectively left him no choice. However, defendants often make decisions not to testify based on the potential damage that prior convictions could inflict on their credibility. The mere fact that a trial court would allow impeachment evidence if a defendant chooses to testify does not necessarily implicate his constitutional right to testify in his own defense. At a minimum, in order to prevail on this argument, appellant would have to show that the trial court abused its discretion in ruling that the probative value of the impeachment evidence outweighed its prejudicial effect; it is only when a trial court has abused its discretion under Rule 609(a)(2) that a defendant's right to testify may be infringed by the threat of impeachment evidence.

■ Next we consider whether the trial court committed reversible error when it did not issue the jury instructions requested by appellant. The evidence in this case consisted largely of circumstantial evidence and inculpatory statements made by appellant to others. The defense believed that the witnesses to appellant's inculpatory statements were significantly impeached. Because the defense believed the jury might convict on circumstantial evidence alone, it requested the following instruction:

A fact may be proved by either direct or circumstantial evidence or by both. The law does not prefer one form of evidence over the other; however, in order to base a verdict solely on circumstantial evidence, the circumstantial evidence must be such so as to exclude every reasonable hypothesis except guilt.

The court declined to give this instruction and instead gave the jury a pattern instruction identical to the requested instruction, but without the final independent clause referring to a verdict based solely on circumstantial evidence. Although the pattern instruction used by the trial court has been explicitly approved by this court, appellant argues that the trial court's ruling constituted reversible error. *See State v. Turnipseed,* 297 N.W.2d 308, 312 (Minn.1980); *State v. Hardy,* 303 N.W.2d 57 (Minn.1981). Appellant argues that the jury should have been instructed on how to handle circumstantial

evidence in the absence of any direct evidence, and hence that *Turnipseed*'s holding that such an instruction is not mandatory should be overruled.

Appellant cites *State v. Webb,* 440 N.W.2d 426 (Minn.1989), to bolster this assertion. In that case, the court used the "rational hypothesis" language requested by appellant to test the sufficiency of the evidence on appeal. *Id.* at 430. We believe that this test does not apply to jury instructions. We noted in *Turnipseed* that other courts have held that jury instructions are conceptually different from tests for the sufficiency of evidence, and that it is not always wise to read a sufficiency of evidence test to the jury. *Id.* at 312. Additionally, *Turnipseed* quotes *Holland v. United States,* 348 U.S. 121, 139–40, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954), in which the U.S. Supreme Court stated:

There is some support for this type of instruction in the lower court decisions * * * but the better rule is that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect.

Here, appellant did not object to the reasonable doubt instructions. Therefore, under *Turnipseed,* the instructions were proper.

■ Appellant next argues that he was denied a fair trial because of a comment made by counsel for the state in closing argument. Appellant believes that the following comment warrants a reversal of the verdict because it suggested that appellant had the burden to prove himself innocent.

Now defense counsel indicated that the evidence would show that someone else committed that crime and you would come to know that. At that time no name was mentioned, nor I submit has there been any evidence submitted that anyone other than the defendant was ultimately responsible for the murder of Dale Yungk on April 14, 1990, back in Todd County.

The context of this comment is important in evaluating its propriety. It is apparent that part of the defense strategy was to prove, or at least suggest, that another person was

responsible for Yungk's murder. Defense counsel made the following statement in his opening argument:

> [B]y the time that you have heard all of the evidence in this case * * * you are going to find that neither my client nor Mr. Scott had anything to do with the murder of Dale Yungk, but * * * you as a jury collectively are going to have a good idea of who did.

The prosecutor simply remarked that this had not been accomplished. Defense counsel did not object to the remark. Furthermore, the defense attempted to suggest in its closing argument that another person killed Yungk.

■ It is established law that a prosecutor may not comment on a defendant's failure to call witnesses. *See e.g., State v. Caron,* 300 Minn. 123, 218 N.W.2d 197 (1974); *State v. Bell,* 294 Minn. 189, 199 N.W.2d 769 (1972). It is equally clear that the state bears the burden of proving all the elements of a crime beyond a reasonable doubt throughout the trial and that the prosecutor is prohibited from shifting the burden of proof to a defendant to prove his innocence. *State v. Brechon,* 352 N.W.2d 745, 748 (Minn.1984). However, we have held that a remark by a prosecutor on the lack of evidence regarding the defense's theory did not shift the burden of proof to the defense. *State v. Race,* 383 N.W.2d 656, 664 (Minn.1986). Additionally, the court has held that corrective instructions may cure certain kinds of prosecutorial error. *Id.* at 664; *State v. Caldwell,* 322 N.W.2d 574, 590 (Minn.1982).

In the instant case, the prosecutor's remark can be viewed as a comment on appellant's theory, and thus not improper. In addition, the trial court instructed the jury that the closing arguments of counsel did not constitute evidence, and that the defendant was under no obligation to prove his innocence. Further, the comment was only one paragraph long in an argument that consisted of 48 pages of the trial transcript and the prosecutor's argument as a whole must be examined to determine whether it provides a basis for reversal. *State v. Daniels,* 332 N.W.2d 172 (Minn.1983). Because we believe that the statement was a permissible

challenge to appellant's theory, it did not constitute error. *State v. Race,* 383 N.W.2d at 664.

■ Appellant also argues that the trial court abused its discretion by directing that his sentence run consecutively with a federal sentence which he is currently serving. Appellant was sentenced to a mandatory life term for his conviction for first-degree murder. However, he will not begin serving that sentence until he has completed a five-year federal sentence for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Appellant admits that the trial court has discretion to impose consecutive sentences in this case, but nevertheless, asserts that the trial court abused its discretion in doing so. He argues that the criminality of his act does not warrant a consecutive sentence.

■ Appellant's argument has no merit. Although we have previously held that when a trial court is silent on whether a sentence is to be served consecutively or concurrently, a later state-imposed sentence should run concurrently with an earlier federally-imposed sentence, *see State v. Wakefield,* 263 N.W.2d 76, 77 (Minn.1978), the trial court is given broad discretion within the sentencing guidelines to depart from presumptive sentences. *State v. Kindem,* 313 N.W.2d 6, 7 (Minn. 1981).

In *State v. Norris,* 428 N.W.2d 61 (Minn. 1988), cited by appellant, the defendant was convicted of first-degree murder and of five counts of assault in the second degree involving five separate victims. The trial court sentenced the defendant to life imprisonment plus 300 months (60 months per assault) to run consecutively. In holding that only three of the five sentences for assault could be served consecutively, the court found that although the sentence was "technically permissible," on the facts of the case, it "unfairly exaggerate[d] the criminality of defendant's conduct." *Id.* at 71.

Appellant argues that the consecutive sentencing in the instant case similarly exaggerated the criminality of his conduct, because the gun he was charged with possessing is the one he allegedly used to murder Yungk.

However, appellant possessed the gun for at least four months prior to the murder. Given the leeway trial courts have in sentencing decisions and that appellant could have been prosecuted for the federal crime months before the murder took place, it was not an abuse of discretion for the district court to impose consecutive sentences.

We now examine arguments made by appellant in his pro se brief. Appellant's first contention relates to the replacement of his appointed counsel. Appellant's attorney was hospitalized unexpectedly and as a result, a 30–day continuance was requested. The court elected to remove appellant's counsel and appoint a public defender to represent appellant. Appellant complains that the trial court's refusal to grant a continuance violated his right to the attorney of his choice and that the attorney was not competent.

While a defendant has the right to court appointed counsel, he does not have the right to choose the attorney; he must accept the attorney appointed by the court. *State v. Fagerstrom*, 286 Minn. 295, 299, 176 N.W.2d 261, 264 (1970). Consequently, appellant's argument that the attorney originally appointed to take his case should have been granted a continuance has no merit.

As to the competence of the counsel, the standard is expressed in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *Strickland*, the Court stated: "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. at 2064. In Minnesota, the standard for attorney competence is "representation by an attorney exercising the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances." *White v. State*, 309 Minn. 476, 481, 248 N.W.2d 281, 285 (1976). In order for there to be a claim for ineffective assistance, there must be both serious error by counsel and prejudice resulting from that error, *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064, *i.e.*, "a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. Although appellant alleges that he disagreed with some of his counsel's tactics, he does not meet either prong of the stringent standard set forth in *Strickland*. Therefore, his ineffective assistance claim is denied.

Appellant's second contention concerns the trial court's decision to keep out evidence that tended to show that a third party committed the murder. Appellant made an offer of proof at trial in order to show that Yungk had previously been beaten and threatened for stealing a large amount of money from two men. The trial court ruled that appellant failed to make the required connection between those persons and the present crime. *State v. Hawkins*, 260 N.W.2d 150, 159 (Minn.1977). Because the record does not reveal how this connection could be made, the trial court was correct in its ruling.

Appellant's next argument relates to the testimony of Michael Olson. Olson testified that appellant admitted killing someone and that he wanted someone to kill Veronica Yarbough. Appellant asserts that the latter statement should not have been admitted because its admission was in violation of Minn.R.Evid. 403, which says evidence should be admitted unless its probative value is substantially outweighed by its prejudicial effect. In other words, a close question favors admissibility. The trial court is given discretion in balancing the probative value of evidence against its prejudicial effect and its decision will not be overturned except where that discretion is abused. *State v. Gavle*, 234 Minn. 186, 48 N.W.2d 44 (1951). *See e.g., State v. Dye*, 333 N.W.2d 642 (Minn. 1983), in which we upheld a trial court's determination that evidence of a defendant's plans to flee was properly admitted. Counsel for appellant did not object to Olson's testimony, and we conclude that, in the absence of an objection, the admission of the statements did not violate the rule.

Appellant next argues that the testimony of two other witnesses should not have been admitted. With regard to the first

witness, counsel made no objection at trial and we fail to see how it prejudiced appellant. On the other hand, the second witness testified that Yungk seemed nervous around appellant and Scott. She arguably crossed into hearsay territory when, on being asked why she thought Yungk was nervous, she answered: "Because of statements he made to me." Defense counsel repeatedly objected to this line of questioning.

In *State v. Blanchard,* 315 N.W.2d 427 (Minn.1982), the court held that hearsay statements concerning a murder victim's fear of a defendant are admissible only when three conditions exist. First, the victim's state of mind must be at issue. It is generally relevant only where the defendant raises the defense of accident, suicide or self-defense. Second, the trial court must engage in the Rule 403 weighing process and third, the trial court must issue a proper limiting instruction to the jury. *Id.* at 432. *See also, State v. Ulvinen,* 313 N.W.2d 425 (Minn. 1981).

In this case, it does not appear that Yungk's state of mind was relevant, nor did the trial court give a limiting instruction directing the jury to accept the testimony only for determining the declarant's state of mind. Therefore, it appears that the trial court erred in its admission of this testimony. However, the part this evidence played was minor when compared with other testimony. Consequently, appellant would not meet the standard articulated in *State v. Loebach,* 310 N.W.2d 58, 64 (Minn.1981), for reversal:

> A defendant claiming error in the trial court's reception of evidence has the burden of showing both the error and the prejudice resulting from the error. * * * A reversal is warranted only when the error substantially influences the jury to convict.

Finally, appellant's other arguments contained in the pro se brief are meritless. The lower court made no error upon which a reversal or new trial could be based.

Affirmed.