STATE of Minnesota, Respondent,

v.

Antoine Delany WILLIAMS, Appellant.

No. A07–1502.

Court of Appeals of Minnesota.

Nov. 18, 2008.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Donna J. Wolfson,

Assistant County Attorney, Minneapolis, MN, for respondent.

Lawrence Hammerling, Chief Appellate Public Defender, Suzanne M. Senecal–Hill, Assistant Public Defender, St. Paul, Minnesota, for appellant.

Considered and decided by HUDSON, Presiding Judge; TOUSSAINT, Chief Judge; and KALITOWSKI, Judge.

## OPINION

HUDSON, Judge.

On appeal from his convictions of ineligible person in possession of a firearm and first-degree assault, appellant argues that the district court abused its discretion by ruling that the state could impeach him with prior felony convictions if he testified and by using the *Hernandez* method to calculate his criminal-history score. He also raises several supplemental pro se challenges. We affirm.

## FACTS

At approximately 2:00 p.m. on September 14, 2006, B.H. was returning home from a job interview. As he drove home, B.H. passed a nearby park where he greeted some friends and saw a man he recognized from the neighborhood as "Little Cuz." B.H. continued driving, and after stopping at a convenience store, he arrived home and parked his car. B.H.'s mother was waiting in the parking lot, and as B.H. approached his mother's truck, he heard someone speaking. When B.H. turned around, a man was pointing a gun at him and said, "Empty your pockets." · B.H. turned from the man and ran toward an alley. As he was running, B.H. heard gunshots and was struck in his buttocks by a bullet.

Sergeant David Ploeger of the Minneapolis Police Department responded to the shooting. When Sergeant Ploeger found B.H., B.H. told him that "Little Cuz" was the person who shot him. Sergeant Ploeger relayed the shooting information over the police radio. Officer Michael Primozich heard the information and recognized "Little Cuz" as appellant's nickname. Officer Primozich recalled seeing appellant in B.H.'s neighborhood about an hour before the shooting. Appellant was arrested for the shooting later that evening.

Appellant was charged by complaint with two counts of attempted first-degree aggravated robbery, first-degree assault, attempted second-degree assault, and ineligible person in possession of a firearm. On October 25, 2006, appellant pleaded not guilty to the charges and made a speedy-trial demand. The trial was scheduled to begin on December 11, 2006. The complaint was amended on October 26, 2006, to remove the attempt element from the second-degree assault charge. The complaint was amended again on November 29, 2006, to add a charge of first-degree attempted murder.

The district court was unable to accommodate a trial date of December 11 and suggested moving appellant's trial to the following week. Appellant's trial counsel moved for a continuance because the proposed date change conflicted with his schedule, and he needed more time to prepare for the amended complaint. The district court found good cause to continue the trial date and scheduled trial for February 12, 2007. Because of an additional scheduling conflict with the district court, appellant's trial did not commence until February 20, 2007.

At trial, Victoria Rogers testified on appellant's behalf. She stated that appellant was with her on September 14, 2006, from early in the afternoon until sometime between 4:30 p.m. and 5:00 p.m. The jury deadlocked on the attempted-first-degree-

murder charge but found appellant guilty of the remaining charges. A mistrial was declared on the attempted-first-degree-murder charge.

Appellant was sentenced on the convictions of ineligible person in possession of a firearm and first-degree assault. The district court used the *Hernandez* method to sentence appellant, first imposing a 60–month sentence on the ineligible-person-in-possession conviction, and then using that conviction to increase appellant's criminal-history score from three to four. The increase in appellant's criminal-history score changed the presumptive sentence on the assault conviction from 104–146 months to 114–160 months. The district court sentenced appellant to 160 months on the assault conviction concurrent to the 60–month sentence. This appeal follows.

### ISSUES

I. Did the district court abuse its discretion in ruling that if appellant testified, the state could impeach him with two prior convictions?

II. Did the district court abuse its discretion by using the *Hernandez* method to calculate appellant's criminal-history score?

III. Did the delay in bringing this matter to trial violate appellant's right to a speedy trial?

### ANALYSIS

#### I

At trial, the state requested that it be allowed to impeach appellant with two prior felony convictions: a third-degree controlled-substance conviction from February 2005 and a fifth-degree controlled-

substance conviction from August 2005.[1] Appellant objected to the admission of his prior convictions. The district court ruled that the state could use the convictions for impeachment if appellant testified. Appellant did not testify.

■ Appellant argues that the district court abused its discretion by ruling that the state could impeach him with his two felony convictions if he testified. This court reviews a district courts decision to admit evidence of a defendants prior convictions for an abuse of discretion. *State v. Gassler*, 505 N.W.2d 62, 67 (Minn.1993).

■ Evidence of a witness's prior felony convictions may be admitted if "the court determines that the probative value of admitting this evidence outweighs its prejudicial effect." Minn. R. Evid. 609(a)(1). In order to determine whether to restrict the use of past convictions, the court is to consider the five factors set forth in *Jones*

(1) the impeachment value of the prior crime, (2) the date of the conviction and the defendants subsequent history, (3) the similarity of the past crime with the charged crime (the greater the similarity, the greater the reason for not permitting use of the prior crime to impeach), (4) the importance of defendants testimony, and (5) the centrality of the credibility issue.

*State v. Jones*, 271 N.W.2d 534, 538 (Minn. 1978).

(1) *Impeachment value of the prior crime*

■ The Minnesota Supreme Court has stated that "impeachment by prior crime aids the jury by allowing it 'to see the "whole person" and thus to judge better the truth of his testimony.'" *State v.*

---

**1.** Only the dates of the offenses were presented to the district court, not the dates of the convictions.

*Brouillette,* 286 N.W.2d 702, 707 (Minn. 1979) (quoting *St. Paul v. DiBucci,* 304 Minn. 97, 100, 229 N.W.2d 507, 508 (1975)). Appellant does not specifically dispute the impeachment value of his prior convictions. Instead, he generally argues that *Brouillette* and its progeny should be overruled. He asserts that the "whole person" analysis makes the first *Jones* factor an "anything goes" test.

Despite appellant's argument, *Brouillette* remains good law in Minnesota. *See State v. Flemino,* 721 N.W.2d 326, 328 (Minn.App.2006) (stating that this court is bound by supreme court's "whole person" rule). The district court utilized *Brouillette's* "whole person" analysis when determining the impeachment value of appellant's prior convictions, stating that the convictions were admissible "so that the jury can evaluate the whole person of the defendant." Because appellant's convictions would have allowed the jury to view appellant's whole person, this factor weighs in favor of admission of the convictions.

### (2) *Date of convictions and subsequent history*

■ Under Minn. R. Evid. 609(b), evidence of a conviction is not admissible if more than ten years have elapsed since the date of conviction. Convictions that have occurred within the ten-year period are presumptively not stale. *Gassler,* 505 N.W.2d at 67. Although the conviction dates were unknown, the district court found that both offenses occurred in 2005, well within the ten-year period of presumptive admissibility. Accordingly, this factor weighs in favor of admission.

### (3) *Similarity of the crimes*

■ "[I]f the prior conviction is similar to the charged crime, there is a heightened danger that the jury will use the evidence not only for impeachment purposes, but also substantively." *Id.* The district court found that the prior controlled-substance crimes were dissimilar to appellant's charged crimes. Appellant admits that the prior convictions and the current charges are not similar, but argues that in "our media-driven society," today's citizens are exposed to so many stories about drugs and crime that the jurors would associate appellant's prior drug convictions with violence. Because the prior convictions and the charged crime bear no similarity, this factor weighs in favor of admission.

### (4) *Importance of appellants testimony*

■ Courts must also "consider whether the admission of the evidence will cause the defendant not to testify." *Id.* at 66. If the ruling on the admissibility of prior convictions prevents a jury from hearing a defendant's version of events, this factor weighs in favor of excluding the evidence. *Id.* at 67. The district court found that appellant's version of the events could be presented to the jury through Rogers's testimony. Appellant does not dispute this finding, but instead argues that it was important for him to give the jury a "more complete explanation" of his version of the events. Because appellant was able to present his side of the story through the testimony of Rogers, this factor weighs in favor of admission.

### (5) *Centrality of credibility issue*

■ Finally, if a defendant's credibility is central to the determination of the case, "a greater case can be made for admitting the impeachment evidence, because the need for the evidence is greater." *State v. Ihnot,* 575 N.W.2d 581, 587 (Minn.1998) (quotation omitted). Appellant asserts that his credibility was not central to the

case. In discussing this factor, the district court stated:

> With respect to the centrality of credibility, he says he wasn't there, witnesses say he was there. Throughout the entire examination and cross examination the issue of identity and the witness's ability to accurately provide an identification has been the subject of a good hunk of the trial, and so therefore I find that the centrality of credibility slightly favors admissibility.

If, as the district court found, appellant's version of the events would directly contradict the testimony of other witnesses, appellant's credibility would have been central to the case. As a result, this factor weighs in favor of admission.

The district court thoughtfully considered each of the five *Jones* factors, and we conclude that the district court did not abuse its discretion in ruling that appellant could be impeached with his prior convictions if he testified.

## II

■ Appellant also contends that the district court abused its discretion by using the *Hernandez* method to calculate his criminal-history score. The district court's determination of a defendant's criminal-history score will not be reversed absent an abuse of discretion. *State v. Stillday,* 646 N.W.2d 557, 561 (Minn.App.2002).

■ Appellant's multiple offenses arose from a single behavioral incident. Minn. Stat. § 609.035, subd. 1 (2006), generally prohibits multiple sentences for offenses resulting from the same behavioral incident. *State v. Schmidt,* 612 N.W.2d 871, 876 (Minn.2000). The statute excepts specific offenses, including possession of a firearm by an ineligible person in violation of Minn.Stat. § 624.713, subd. 1(b) (2006). Minn.Stat. § 609.035, subd. 3 (2006). Appellant acknowledges that Minn.Stat. § 609.035, subd. 3, permits separate sentencing for his ineligible-possession and assault convictions.

■ But appellant disputes whether the statute permits the district court to sentence him using the *Hernandez* method. The *Hernandez* sentencing method allows a district court sentencing a defendant on the same day for multiple convictions to assign one additional point for each felony conviction as it is imposed, provided that the offenses are not part of a single behavioral incident or conduct. *State v. Hernandez,* 311 N.W.2d 478, 480–81 (Minn.1981). The *Hernandez* method may not be used to increase an offender's criminal-history score for a subsequent offense if the offenses arose from a single behavioral incident within the meaning of Minn.Stat. § 609.035, subd. 1. *State v. Hartfield,* 459 N.W.2d 668, 670 (Minn. 1990).

Accordingly, the question before this court is whether the firearms exception to the single-behavioral-incident rule in Minn. Stat. § 609.035, subd. 3, applies to the *Hernandez* method of sentencing. We have considered this specific issue twice before, with somewhat inconsistent results. In *State v. Bergren,* 2001 WL 378978 (Minn.App.2001), the defendant was convicted of possession of a firearm by an ineligible person, first-degree burglary, attempted aggravated robbery, and second-degree assault. *Id.* at *1. The district court employed the *Hernandez* method and counted the defendant's firearm conviction as part of his criminal-history score in determining his burglary sentence. *Id.* at *3.

Like appellant here, the defendant in *Bergren* acknowledged that Minn.Stat. § 609.035 allowed him to be sentenced for both of his crimes even though they arose from a single behavioral incident. *See id.*

But the defendant in *Bergren* argued, as appellant does here, that the exception in Minn. Stat § 609.35 does not apply to calculating criminal-history scores under the Minnesota Sentencing Guidelines. *See id.*

This court held that "the legislature expressly provided an exception to the same-behavioral-incident rule for firearms offenses," and that "[t]he statutory exception demonstrates a legislative intention to treat firearms offenses differently from other offenses that are part of the same course of conduct." *Id.* Accordingly, this court concluded that

> a defendant's criminal history score under the guidelines should reflect the statutory firearm-possession exception. Thus the offenses of possession of a firearm by a felon and burglary may be convicted and sentenced in the order in which they occurred, and the court may include the first-occurring offense in the criminal history score to determine the presumptive sentence for the second.

*Id.*

But more recently, we held that a defendant convicted of ineligible person in possession of a firearm and three counts of second-degree assault could not be sentenced using the *Hernandez* method. In *State v. Wood*, No. A05–557, 2007 WL 1053003 (Minn.App. Apr.3, 2007), the district court applied the *Hernandez* method and increased the defendant's criminal-history score based on the ineligible-person-in-possession offense before sentencing the defendant on the assault conviction. *Id.* at *4. The defendant in *Wood* argued that the district court erred when it used the *Hernandez* method because his convictions arose from the same behavioral incident. *Id.* The state conceded the issue, and this court agreed with the defendant. *Id.*

▇▇▇ Today we hold that the firearms exception to the single-behavioral-incident rule permits the *Hernandez* method of sentencing even when the offenses are part of the same course of conduct. Therefore, where a defendant's multiple offenses arise from a single behavioral incident and include ineligible possession of a firearm, the defendant can be sentenced for the ineligible-possession offense in addition to being sentenced for one of the other offenses, and the offense that occurred first can be sentenced first and included in the defendant's criminal-history score to determine the presumptive sentence for the second offense. As we stated in *Bergren*, the legislature expressly provided an exception to the single-behavioral-incident rule for firearms offenses, and that exception demonstrates a legislative intention to treat firearms offenses differently from other offenses that are part of the same course of conduct.

In support of his claim, appellant directs this court to *Hartfield*. In *Hartfield*, the defendant was found guilty of both burglary and first-degree criminal sexual conduct. 459 N.W.2d at 670. The district court sentenced appellant using the *Hernandez* method, first sentencing the defendant for the burglary conviction, and then using the burglary conviction to give the defendant a criminal-history score of one. *Id.* The question before the supreme court was whether the sentencing guidelines permitted the use of the *Hernandez* method to sentence the defendant. *Id.*

The Minnesota Supreme Court recognized that Minn.Stat. § 609.585 contains a burglary exception to the single-behavioral-incident rule. *Id.* at 670. But the court noted that Minn. Sent. Guidelines II.B.102 states that "[w]hen multiple current convictions arise from a single course of conduct and multiple sentences are imposed on the same day pursuant to Minn. Stats. sec. 609.585 or 609.251, the conviction and sentence for the 'earlier' offense should not

increase the criminal history score for the 'later' offense." *Id.* The court held that this language precluded the use of the *Hernandez* method for the defendant's burglary and first-degree criminal sexual conduct convictions, despite the single-behavioral-incident exception for burglary. *Id.*

Appellant asserts that the Minnesota Supreme Court's analysis in *Hartfield* applies here. He argues that the firearms exception to the single-behavioral-incident rule should be treated no differently than the supreme court treated the burglary exception at issue in *Hartfield.* We disagree. The decision in *Hartfield* was based directly on Minn. Sent. Guidelines II.B.102, which, as the supreme court found, explicitly precludes the application of the burglary exception to the *Hernandez* method of sentencing. But II.B.102 makes no reference to the firearms exception, and our review of the history of comment II.B.102 indicates that the sentencing commission purposefully excluded the firearms exception from the application of II.B.102.

The current version of comment II.B. 102, now II.B.107, states that "[w]hen multiple current convictions arise from a single course of conduct and multiple sentences are imposed on the same day pursuant to Minn. Stats. §§ 152.137, 609.585 or 609.251, the conviction and sentence for the 'earlier' offense should not increase the criminal history score for the 'later' offense." Minn. Sent. Guidelines II.B.107 (2008). But in 1983, comment II.B.102 only made reference to Minn.Stat. § 609.585, the burglary exception to the single-behavioral-incident rule. Minn. Sent. Guidelines II.B.102 (1983). And the 1983 comment only stated that multiple sentences under Minn.Stat. § 609.585 were to receive one criminal-history point. *Id.*

In 1983, however, the legislature enacted Minn.Stat. § 609.251, a kidnapping exception to the single-behavioral-incident rule. Minn.Stat. § 609.251 (1983). As a result, comment II.B.102 was amended in 1984 to account for the newly-created exception to the single-behavioral-incident rule. Minn. Sent. Guidelines II.B.102 (1984). Similarly, the legislature enacted Minn.Stat. § 152.137 in 2005, which provides an exception to the single-behavioral-incident rule for certain methamphetamine-related crimes. Minn.Stat. § 152.137, subd. 4 (Supp.2005). And in 2006, comment II.B.102 was again amended to account for the methamphetamine exception to the single-behavioral-incident rule. Minn. Sent. Guidelines II.B.102 (2006).

The history of amendments to comment II.B.102 suggests that when the sentencing commission believes a newly enacted exception to the single-behavioral-incident rule should be governed by the dictates of II.B.102, the commission will act swiftly to bring the exception within the purview of II.B.102. But more than a decade after the 1996 enactment of Minn.Stat. § 609.035, subd. 3—the firearms exception to the single-behavioral-incident rule—II.B.102 still makes no reference to the firearms exception. The general principle frequently applied to the construction of statutes is that expression of one thing implies the exclusion of all others. *See County of Morrison v. Litke,* 558 N.W.2d 16, 18 (Minn.App. 1997). In construing provisions of the sentencing guidelines, the Minnesota Supreme Court has treated the guidelines as if they are a collection of statutes and has applied the rules of statutory construction. *See State v. Maurstad,* 733 N.W.2d 141 (Minn. 2007). Thus, the rule of "expressio unius est exclusio alterias" that applies to the construction of statutes would apply here, and therefore we construe this omission as

a purposeful exclusion of the firearms exception from the application of II.B.102.

Accordingly, we hold that the restrictions of II.B.102 do not apply to the firearms exception to the single-behavioral-incident rule, and the firearms exception is thus applicable to the *Hernandez* method of sentencing. Therefore, the district court did not abuse its discretion in using the *Hernandez* method to sentence appellant.

### III

■ Appellant raises several additional issues in a supplemental pro se brief. He first argues that his right to a speedy trial was violated. A speedy-trial challenge presents a constitutional question subject to de novo review. *State v. Cham*, 680 N.W.2d 121, 124 (Minn.App.2004), *review denied* (Minn. July 20, 2004).

■ "The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 6 of the Minnesota Constitution." *State v. DeRosier*, 695 N.W.2d 97, 108 (Minn.2005). The Supreme Court has set forth four factors to consider when determining if the right to a speedy trial has been violated: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972); *see also State v. Widell*, 258 N.W.2d 795, 796 (Minn.1977) (adopting the *Barker* inquiry).

■ In considering the first *Barker* factor, the length of delay, a delay of over 60 days from the date a defendant demands a speedy trial is presumptively prejudicial such that it will trigger consideration of the remaining *Barker* factors. *State v. Friberg*, 435 N.W.2d 509, 513

(Minn.1989). Here, there was a delay of over 60 days, and review of the remaining *Barker* factors is required.

■ The second *Barker* factor contemplates the reason for the delay. The record indicates that the delay in this case was caused by scheduling conflicts with the district court and a continuance requested by appellant's trial counsel. Although the responsibility for an overburdened judicial system cannot rest with the defendant, *State v. Jones*, 392 N.W.2d 224, 235 (Minn.1986), "when the overall delay in bringing a case to trial is the result of the defendant's actions, there is no speedy trial violation." *State v. Johnson*, 498 N.W.2d 10, 16 (Minn.1993). Because the delay is attributable to both appellant and the district court, this factor appears to be neutral.

■ The third *Barker* factor, the defendant's assertion of his right to a speedy trial, indicates no violation of appellant's speedy-trial right. Appellant asserted his right to speedy trial on October 25, 2006. But the delay in this case was partially the result of appellant's continuance request. "[D]elay occasioned by the defendant himself often is deemed a temporary waiver of his speedy trial demand, which can only be revived when the defendant reasserts his speedy trial right." *Id.* It does not appear from the record that appellant ever reasserted his speedy trial demand. In fact, when the trial date was moved to February 20, the district court explained the reasons for the delay, and appellant acquiesced to the date change, indicating that he understood why trial was delayed.

"The final prong of the *Barker* test is to determine whether [a defendant] suffered prejudice as a result of the delays." *State v. Windish*, 590 N.W.2d 311, 318 (Minn. 1999). In considering prejudice to a defendant, the Minnesota Supreme Court has

considered three interests protected by the right to a speedy trial: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) preventing the possibility that the defense will be impaired. *Id.* (citing *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193).

Appellant was incarcerated for the entire time awaiting trial, but he was also being held for a probation-revocation hearing that was continued until after the trial. Because he was being held for a revocation hearing, appellant was going to be incarcerated through the trial date notwithstanding any delays. Therefore, appellant's pretrial incarceration was not oppressive. Further, the record does not reflect any particularized evidence of appellant's anxiety or concern beyond that typically experienced by a defendant in a criminal proceeding, nor does the record disclose any impairment of appellant's defense.

After a review of the *Barker* factors, we find no violation of appellant's right to a speedy trial.

Appellant also raises claims of prosecutorial misconduct, improper impeachment, and ineffective assistance of counsel. We have reviewed these claims and find them without merit.

## DECISION

Because the probative value of appellant's prior convictions was not outweighed by their prejudicial effect, the district court did not abuse its discretion by ruling that the state could impeach appellant with his prior convictions if he testified. Additionally, because the firearms exception to the single-behavioral-incident rule permits the *Hernandez* method of sentencing even when the offenses are part of a single behavioral incident, the district court did not abuse its discretion by increasing appellant's criminal-history score for ineligible person in possession of a firearm before imposing the sentence for assault. Appellant's right to a speedy trial was not violated, and his remaining pro se challenges are without merit.

**Affirmed.**