STATE of Minnesota, Respondent,

v.

Andrew Anthony CRAIG, Appellant.

No. A10–1938.

Court of Appeals of Minnesota.

Dec. 5, 2011.

Review Granted Feb. 14, 2012.

Lori Swanson, Attorney General, St. Paul, Minnesota; and John Choi, Ramsey County Attorney, Peter Marker, Assistant County Attorney, St. Paul, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, G. Tony Atwal, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by ROSS, Presiding Judge; HUDSON, Judge; and WORKE, Judge.

## OPINION

HUDSON, Judge.

On appeal from his conviction of possession of a firearm by an ineligible person, appellant Andrew Anthony Craig argues that (1) Minn.Stat. § 624.713, subd. 1(2), which imposes a lifetime prohibition against the possession of a firearm by a

person convicted of a crime of violence, violates the Second Amendment as applied to him; (2) the district court committed reversible error by failing to suppress the firearm evidence found during a warrantless search of the car driven by appellant; (3) the district court committed reversible error by accepting appellant's stipulation to an element of the charged offense without first securing his personal and express jury-trial waiver on the stipulated-to element; (4) the district court committed reversible error by admitting evidence of appellant's prior controlled-substance-crime conviction for impeachment purposes; (5) the district court committed reversible error by denying appellant's motion to impeach the credibility of an unavailable witness whose hearsay statements were admitted through another testifying witness; and (6) the imposition of the public defender copayment must be reversed because the district court imposed the copayment without determining whether appellant had the ability to pay under Minn.Stat. § 611.20 (2010).

Because (1) Minn.Stat. § 624.713, subd. 1(2), is not unconstitutional as applied to appellant; (2) an exception to the warrant requirement permitted the search of the car; (3) any error in accepting appellant's stipulation to an element of the offense was harmless; (4) the introduction of appellant's prior conviction for impeachment purposes was proper; (5) refusing to allow impeachment of the hearsay statements was not an abuse of discretion; and (6) imposition of the public defender copayment was authorized by statute, we affirm.

## FACTS

This case arises out of an incident in which Mounds View police officers stopped a car driven by appellant Andrew Anthony Craig because he was a suspect in an investigation of domestic assault. During the traffic stop, the officers discovered a firearm in appellant's possession. Because of appellant's 2008 felony conviction of fifth-degree controlled substance crime, appellant was charged with possession of a firearm by an ineligible person, in violation of Minn.Stat. § 624.713, subd. 1(2) (Supp. 2009).[1] The district court denied appellant's motion to suppress evidence gained as a result of the stop. Appellant demanded a jury trial.

The record shows that on September 10, 2009, at about 1:20 a.m., a Mounds View police officer received information from dispatch about a domestic disturbance call at a local apartment complex. The original report was that a third party had called 911 to say that a female was running through the hallways and screaming for someone to call the police. The female was subsequently identified as S.Y.

As the officer responded to the call, the dispatcher relayed that the other party involved in the incident had left the scene in a maroon car with Minnesota license plates. The officer noticed the car leaving the area and turned to follow it. Another officer met with S.Y. at the apartment building.

The first officer learned that the maroon car was registered to S.Y. The officer was still following it when the dispatcher advised the officer of the identity of the male believed to be driving the car, who was appellant, and that, according to S.Y., appellant normally carries a gun in his waistband. Based on this information, the offi-

---

1. We note that the version of Minn.Stat. § 624.713, subd. 1(2), that was in effect at the time of appellant's offense is identical to the current version of the statute. *Compare* Minn.Stat. § 624.713, subd. 1(2) (Supp.2009) *with* Minn.Stat. § 624.713, subd. 1(2) (2010).

cer requested assistance from other police in the area.

While following the maroon car, the officer observed that the car had only one occupant. He also observed that the driver leaned and reached over to the passenger seat so far that the officer lost sight of his head. Other police squads joined the officer in following the maroon car.

The police officers conducted a felony stop of the car. Appellant was cooperative. One officer placed appellant under arrest for domestic assault. Appellant also had an outstanding felony warrant, a family court warrant, and no valid driver's license.

While appellant was with the officer, a Ramsey County deputy approached the maroon car and, without a warrant, began conducting what he and the Mounds View officer characterized as an "inventory search." The deputy alerted the officer to a gun in the vehicle, which the deputy had found in an unzipped backpack sitting on the front passenger seat. The deputy saw the open backpack through the front passenger-side window, opened the front passenger-side door, and looked inside the backpack. In the backpack he found a wool stocking cap; inside the cap he found a .22 caliber revolver. DNA testing on the grip of the gun yielded a mixed sample from which 98.8% of the general population could be excluded, but from which appellant could not be excluded. The mixture from the grip of the gun contained both male and female DNA. A DNA mixture from the trigger of the gun was also tested, and the results indicated that appellant was excluded from that sample.

Appellant testified in his defense. He said that he and S.Y. had been together for nine years and that they have a five-year-old daughter together. Appellant said that they had broken up, but that he stayed with S.Y. "off and on." Appellant testified that they had been at a tavern having a few drinks, that they got into an argument on their way back to S.Y.'s apartment, and that the argument escalated, so he packed his things and waited in the entryway for his ride to come and pick him up. Appellant claimed that he did not know a gun was in the car, and that when it was shown to him, he said, "That's not my gun."

Appellant admitted that the backpack was his, but he claimed that the backpack was already in the car, and it was not among the items that he brought to the car from the apartment building. He stated that S.Y. had driven them in her car from the tavern to the apartment building.

On cross-examination, appellant testified that he had a prior felony conviction for possession of a controlled substance and was on probation for that offense. The prior conviction evidence was admitted by the district court for impeachment purposes over appellant's objection.

The jury found appellant guilty. The district court sentenced appellant to the mandatory minimum 60–month prison term and ordered him to make a $75 public defender copayment. This direct appeal follows.

## ISSUES

I.  Does Minn.Stat. § 624.713, subd. 1(2), as applied to appellant, violate the Second Amendment to the United States Constitution?

II.  Did the district court err in denying appellant's motion to suppress the firearm as the product of an illegal search of the vehicle?

III.  Did the district court commit reversible error by accepting appellant's stipulation to an element of the charged offense without obtaining a proper waiver of appel-

lant's right to a jury determination of that element?

IV. Did the district court abuse its discretion by admitting evidence of appellant's prior felony controlled substance conviction for impeachment purposes?

V. Did the district court abuse its discretion by denying appellant's request to challenge the credibility of hearsay statements that were made to the police by an unavailable witness?

VI. Did the district court err by requiring appellant to make a copayment for the public defender without first determining his ability to pay?

## ANALYSIS

### I

Minn.Stat. § 624.713, subd. 1(2), prohibits a person who has been convicted of a "crime of violence" from possessing a firearm. A "crime of violence" includes any felony conviction under chapter 152, which relates to offenses involving drugs and controlled substances. Minn.Stat. § 624.712, subd. 5 (2010), Minn.Stat. §§ 152.021–.21 (2010 & Supp.2011). The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

▆▆▆ Minnesota statutes are presumed constitutional, and an appellate court's "power to declare a statute unconstitutional should be exercised with extreme cau-

tion and only when absolutely necessary." *State v. Bussmann,* 741 N.W.2d 79, 82 (Minn.2007) (quotation omitted). "A party challenging a statute on constitutional grounds must demonstrate, beyond a reasonable doubt, that the statute violates a provision of the constitution." *State v. Grossman,* 636 N.W.2d 545, 548 (Minn. 2001). The constitutionality of a statute presents a question of law reviewed de novo. *Bussmann,* 741 N.W.2d at 82. Statutory construction is also a question of law, which this court reviews de novo. *State v. Zacher,* 504 N.W.2d 468, 470 (Minn.1993).

The United States Supreme Court recently held that, under the Second Amendment, an individual has the right to possess a firearm. *District of Columbia v. Heller,* 554 U.S. 570, 595, 128 S.Ct. 2783, 2799, 171 L.Ed.2d 637 (2008). The Court suggested that such a right is primarily for the purpose of individual self-defense, particularly in the home. *Id.* at 628–29, 128 S.Ct. at 2817–18. In addition, the Court has since held that this right is fully applicable to the states by virtue of the Fourteenth Amendment. *McDonald v. City of Chicago,* —— U.S. ——, 130 S.Ct. 3020, 3050, 177 L.Ed.2d 894 (2010).[2] But the right to bear arms is "not unlimited." *Heller,* 554 U.S. at 626, 128 S.Ct. at 2816–17. The Court cautioned in *Heller,* and reiterated in *McDonald,* that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings," which prohibitions are "presumptively lawful." *Id.* at

**2.** In *State v. Turnbull,* 766 N.W.2d 78, 80 (Minn.App.2009), we held that the Second Amendment "is not incorporated in the Due Process Clause [so as to be] enforceable against the states" and that Minn.Stat.

§ 624.713 does not infringe upon Second Amendment rights. The Supreme Court's decision in *McDonald* calls into question this conclusion in *Turnbull.*

626–27 & n. 26, 128 S.Ct. at 2816–17 & n. 26; *see McDonald,* 130 S.Ct. at 3047.

Nonetheless, appellant argues that the felon-in-possession-of-a-firearm statute is unconstitutional because it does not survive strict-scrutiny analysis. Notably, neither *Heller* nor *McDonald* specifies the level of scrutiny to be afforded to gun-dispossession laws, and Minnesota state courts have not yet identified one. *See State v. Williams,* 794 N.W.2d 867, 875 n. 6 (Minn.2011) (noting that the Supreme Court in *Heller* did not announce the level of scrutiny that courts should apply when determining whether a state action violates Second Amendment rights).[3]

Some federal courts have held that the language in *Heller* concerning presumptively constitutional gun prohibitions makes it unnecessary to apply any level of scrutiny to those prohibitions because they are constitutional exceptions to the Second Amendment right. *See United States v. Rozier,* 598 F.3d 768, 770 (11th Cir.2010) (declining to apply any level of scrutiny and determining the federal felon-in-possession statute, 18 U.S.C. § 922(g)(1) (2006), to be constitutional, "even if a felon possesses a firearm purely for self-defense"), *cert. denied,* — U.S. —, 130 S.Ct. 3399, 177 L.Ed.2d 313 (2010). Other federal courts have construed *Heller* as suggesting that courts should apply different levels of scrutiny depending on the type of restriction at issue and that restrictions on felons should be afforded intermediate scrutiny. *See United States v. Marzzarella,* 614 F.3d 85, 96 (3d Cir.2010) (concluding that Second Amendment challenges can trigger more than one standard of scrutiny and that a federal statute prohibiting possession of unmarked firearms survives an intermediate level of scrutiny), *cert. denied,* — U.S. —, 131 S.Ct. 958, 178 L.Ed.2d 790 (2011); *United States v. Skoien,* 614 F.3d 638, 641–42 (7th Cir. 2010) (concluding that a federal statute prohibiting persons convicted of misdemeanor crimes of domestic violence from possessing a firearm is a "categorical limit on the possession of firearms," which warrants and survives intermediate level of scrutiny), *cert. denied,* — U.S. —, 131 S.Ct. 1674, 179 L.Ed.2d 645 (2011); *Heller v. District of Columbia (Heller II),* — F.3d —, 2011 WL 4551558, at *10 (C.A.D.C. Oct. 4, 2011) (concluding that intermediate scrutiny applied to firearm-registration requirements and prohibitions on semi-automatic rifles and large-capacity magazines); *see also* Dennis A. Henigan, *The Heller Paradox,* 56 UCLA L.Rev. 1171, 1197–98 (2009) (stating that "the *Heller* majority ... implicitly rejected strict scrutiny" by describing certain gun-control measures as presumptively lawful); Carlton F.W. Larson, *Four Exceptions in Search of a Theory: District of Columbia v. Heller and Judicial Ipse Dixit,* 60 Hastings L.J. 1371, 1379 (2009) (opining that "it is doctrinally impossible to conclude that strict scrutiny governs Second Amendment claims, while also upholding" the presumptively lawful exceptions specified in *Heller* ).

■ After careful consideration of these federal court decisions, and for the reasons explained below, we now hold that an alleged violation of an individual's right to

**3.** The *Heller* court did, however, rule out rational-basis review: "If all that was required to overcome the right to keep and bear arms was a rational basis, the Second Amendment would be redundant with the separate constitutional prohibitions on irrational laws, and would have no effect." *Heller,* 554 U.S. at 629 n. 27, 128 S.Ct. at 2817 n. 27. Instead, *Heller* suggested that one of the two "traditionally expressed levels" of heightened scrutiny—intermediate scrutiny or strict scrutiny—should be applied to laws implicating the Second Amendment. *Heller,* 554 U.S. at 634, 128 S.Ct. at 2821.

possess a firearm as recognized in *Heller* and *McDonald,* which is expressed by the proscription in Minn.Stat. § 624.713, subd. 1(2), warrants the application of an intermediate level of scrutiny.[4]

In rejecting a strict-scrutiny standard of review, we find persuasive and adopt the reasoning of those federal courts that have held that a strict-scrutiny standard does not square with *Heller*'s reference to "presumptively lawful regulatory measures" such as laws prohibiting firearms possession by felons. *See, e.g., Marzzarella,* 614 F.3d at 91 (stating that "presumptively lawful" language suggests that "identified restrictions are presumptively lawful because they regulate conduct outside the scope of the Second Amendment"). Moreover, the Supreme Court did not explicitly hold that the Second Amendment right is a fundamental right, so that restrictions on this right are subject to a strict-scrutiny standard of review. Our analysis thus moves to intermediate scrutiny.

A law survives intermediate scrutiny if it is "substantially related to an important governmental objective." *Clark v. Jeter,* 486 U.S. 456, 461, 108 S.Ct. 1910, 1914, 100 L.Ed.2d 465 (1988); *In re J.J.S.,* 707 N.W.2d 706, 709 (Minn.App.2006), *review denied* (Minn. Mar. 14, 2006). Protecting the public from offenders who use guns is certainly an important governmental objective, if not a compelling state interest. Appellant recognizes that the state likely has a compelling interest in protecting public safety by prohibiting "truly violent offenders" from possessing firearms, but he contends that he is not a "truly violent offender" and makes several arguments which, he claims, demonstrate that the statute is overly broad as applied to him.

Appellant first argues that Minn.Stat. § 624.713, subd. 1(2), is overly broad because his previous felony conviction, possession of a controlled substance in violation of Minn.Stat. § 152.025, subd. 2(1) (2006), is not a "truly violent" crime. But appellant's underlying felony drug conviction involved possession of a firearm. *Cf. United States v. Bustos–Torres,* 396 F.3d 935, 943 (8th Cir.2005) (recognizing law enforcement's reasonable belief that person was armed and dangerous in context of drug transaction because "weapons and violence are frequently associated with drug transactions"). Thus, appellant's characterization of this felony conviction as "not truly violent," is somewhat misleading.[5]

Appellant further contends that if the government's interest is to protect public safety, then the firearm prohibition must be applied on a "case-by-case basis" to those individuals who have demonstrated that they are a danger to public safety. But we do not agree that such narrow tailoring is required here. Under an inter-

---

4. We are mindful that in Minn.Stat. § 624.714, subd. 22 (2010), the Minnesota legislature recognizes and declares that the Second Amendment guarantees a fundamental, individual right to keep and bear arms; that "[t]he provisions of [that] section are declared to be necessary to accomplish compelling state interests in regulation of those rights"; and that "[t]he terms of [that] section must be construed according to the compelling state interest test." But Minn.Stat. § 624.714 (2010), also known as the Minnesota Citizens' Personal Protection Act of 2003, involves the issuance of permits to carry guns. In contrast, Minn.Stat. § 624.713 covers those whom the Minnesota legislature has deemed ineligible to possess a firearm.

5. We note that the Minnesota legislature has determined that possession of a controlled substance in violation of Minn.Stat. § 152.025, subd. 2(1), constitutes a "crime of violence" for purposes of Minn.Stat. § 624.713, subd. 1(2). Minn.Stat. § 624.712, subd. 5.

mediate level of scrutiny, the gun restriction on ineligible persons need only be "substantially related" to the governmental interest. Furthermore, the Minnesota legislature included only *felony-level* drug convictions in the statutory definition of "crimes of violence," which demonstrates that the legislature has limited the gun prohibition to persons who have been convicted of more serious drug offenses. *See* Minn.Stat. § 624.712, subd. 5. We conclude that prohibiting those who have been convicted of felony drug offenses from possessing firearms is substantially related to the government's interest in protecting public safety.

Appellant also argues that the lifetime prohibition in Minn.Stat. § 624.713, subd. 1(2), is overly broad because it fails to provide a "restoration mechanism" for individuals who have been convicted of a crime of violence but who, after some unspecified passage of time, are no longer a danger to public safety. But appellant cites to no decisions that hold a felon-in-possession statute unconstitutional on such grounds.[6] And appellant has not demonstrated that any such overbreadth applies to him. Indeed, only one year had passed since his 2008 felony drug conviction when appellant was discovered to be in possession of a gun, this time after alleged involvement in a domestic assault. Furthermore, Minnesota law provides an avenue for those convicted of crimes to petition for restoration of the right to possess a firearm. *See* Minn.Stat. § 609.165, subd. 1d (2010) (allowing the district court to restore a felon's ability to possess a firearm

if that person demonstrates good cause and has been released from confinement).

Finally, appellant argues that the Second Amendment protects a right to individual self-defense that is "deeply rooted" in this country's tradition and history and is "the central component of the Second Amendment." *McDonald*, 130 S.Ct. at 3026 (quotations omitted). But *McDonald* involved a challenge to city ordinances that prevented an individual from possessing an unregistered firearm in his or her home and did not address a felon-in-possession law. *Id.* Furthermore, *Heller* recognized that this right is held by "law-abiding, responsible citizens." *Heller*, 554 U.S. at 635, 128 S.Ct. at 2821. A person convicted of a felony, particularly one that is listed as a "crime of violence" under Minn.Stat. § 624.712, subd. 5, has demonstrated that he or she is not a law-abiding, responsible citizen. Moreover, appellant cites no authority for the proposition that felon-in-possession statutes are unconstitutional on this ground; in fact, several federal cases have specifically rejected the self-defense argument in regard to the constitutionality of felon-in-possession statutes. *See United States v. Barton*, 633 F.3d 168, 174 (3d Cir.2011) (rejecting "fallback" argument that the government may not strip anyone, including a felon, of fundamental right to use a weapon in order to defend "hearth and home"); *Rozier*, 598 F.3d at 770 ("We find [the federal felon-in-possession law] to be constitutional, even if a felon possesses a firearm purely for self-defense.").

*Heller* counseled that the Supreme Court's decision should not be read "to cast doubt on" laws prohibiting felons from

---

6. The state cites *Britt v. State*, 363 N.C. 546, 681 S.E.2d 320 (2009), in which the North Carolina Supreme Court concluded that a defendant's 30–year–old conviction of drug possession with intent to distribute was insufficient to deprive him of his state constitutional right to bear arms. *But see United States v.*

*Torres–Rosario*, 658 F.3d 110, 113 (1st Cir. 2011) (stating that the approach in *Britt*, "applied to countless variations in individual circumstances, would ... present serious problems of administration, consistency and fair warning").

possessing firearms. *Heller*, 554 U.S. at 626–27, 128 S.Ct. at 2816–17. Thus, most federal courts have denied as-applied attacks on the constitutionality of 18 U.S.C. § 922(g)(1), the federal felon-in-possession law. *See, e.g., Rozier*, 598 F.3d at 771 ("This language suggests that statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment."); *United States v. Khami*, 362 Fed.Appx. 501, 507–08 (6th Cir.2010); *United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009), *cert. denied*, —— U.S. ——, 130 S.Ct. 1686, 176 L.Ed.2d 179 (2010); *United States v. Anderson*, 559 F.3d 348, 352, *cert. denied*, —— U.S. ——, 129 S.Ct. 2814, 174 L.Ed.2d 308 (2009). Appellant has not proffered a compelling reason for Minnesota courts to do otherwise. Accordingly, we conclude that intermediate-level scrutiny is the most appropriate standard to apply to a Second Amendment challenge to Minn.Stat. § 624.713, subd. 1(2), and that Minn.Stat. § 624.713, subd. 1(2), as applied to appellant, survives intermediate-level scrutiny and is therefore constitutional.

## II

■ Where the facts are not in dispute, as here, we review a district court's pretrial order on motions to suppress evidence de novo and determine "whether the police articulated an adequate basis for the search or seizure at issue." *State v. Flowers*, 734 N.W.2d 239, 247–48 (Minn.2007). The Fourth Amendment to the United States Constitution and Article I, Section 10, of the Minnesota Constitution guarantee an individual's right to be free from unreasonable searches and seizures. "Warrantless searches are generally unreasonable unless they fall within a recognized warrant exception." *State v. Ortega*, 770 N.W.2d 145, 149 (Minn.2009). And unless the search falls within a recognized exception, any evidence collected from a warrantless search must be suppressed. *Flowers*, 734 N.W.2d at 248. The state bears the burden of establishing at least one exception to the warrant requirement. *State v. Ture*, 632 N.W.2d 621, 627 (Minn. 2001).

■ Appellant argues that the district court erred by declining to suppress evidence of the firearm found in the car during the warrantless search. The district court did not specify on which exception to the warrant requirement it was relying, but it made detailed findings of fact when denying appellant's motion to suppress evidence of the firearm. Although the state argues that several exceptions to the warrant requirement apply, we conclude that application of the automobile exception applies, and we confine our analysis to that exception.

■ As an initial matter, appellant contends that the state waived this argument on appeal because the state did not specifically argue the automobile exception at the suppression hearing and the district court did not rule on whether it applied. But when reviewing pretrial orders on motions to suppress evidence, this court "may independently review the facts and determine, as a matter of law, whether the district court erred in suppressing—or not suppressing—the evidence." *State v. Harris*, 590 N.W.2d 90, 98 (Minn.1999). Given this independent review, we will consider the state's argument on appeal that the automobile exception applies.

■ Under the automobile exception, a police officer may search a vehicle without a warrant if the officer has probable cause to believe the search will produce evidence of a crime. *Maryland v. Dyson*, 527 U.S. 465, 467, 119 S.Ct. 2013, 2014, 144 L.Ed.2d 442 (1999); *State v. Bigelow*, 451 N.W.2d 311, 311 (Minn.1990) (holding that if police have probable cause to search a

vehicle for evidence of a crime, they may "search every part of the vehicle and its contents which may conceal the object of the search"). Probable cause to search an automobile exists if "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Wiley,* 366 N.W.2d 265, 268 (Minn. 1985) (quotation omitted). Probable cause to conduct a warrantless search of a motor vehicle "must be based on objective facts that could justify the issuance of a warrant by a magistrate and not merely on the subjective good faith of the police officers." *State v. Munson,* 594 N.W.2d 128, 136 (Minn.1999) (quoting *United States v. Ross,* 456 U.S. 798, 808, 102 S.Ct. 2157, 2164, 72 L.Ed.2d 572 (1982)). Probable cause "exists where the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a reasonable man of reasonable caution in the belief that the automobile contains articles the officer is entitled to seize." *State v. Gallagher,* 275 N.W.2d 803, 806 (Minn.1979). The probable-cause standard is objective and requires us to consider the totality of the circumstances known to the police. *State v. Johnson,* 689 N.W.2d 247, 251 (Minn.App.2004), *review denied* (Minn. Jan. 20, 2005).

The state argues that this case is similar to *State v. Timberlake,* 744 N.W.2d 390 (Minn.2008), in which the Minnesota Supreme Court held that police had reasonable suspicion of criminal activity justifying the stop of an automobile because an informant had tipped them that a person traveling in the automobile possessed a firearm. *Id.* at 397. But the supreme court specifically chose not to "discuss or analyze" the officers' conduct *after* stopping the vehicle. *Id.* at 391 n. 2. Thus, the only issue before the court in *Timberlake* was whether the stop was legal; the warrantless search that followed was not at issue. Therefore, *Timberlake* provides little guidance here.

The district court in this case made several key findings of fact, based on the police officers' testimony at the suppression hearing, supporting its determination that probable cause existed to search the car: (1) the police were notified by a dispatcher that appellant had left the scene of a domestic disturbance where the complainant was screaming for someone to call the police; (2) the police were informed that appellant had left the scene in a maroon-colored car registered to the alleged victim; (3) the police were able to locate the car and confirm the registration; (4) the police were informed that appellant was carrying a gun in his waistband; (5) while following the car, police observed appellant, the sole occupant, moving around inside and reaching so far over to the passenger side that police lost sight of his head; and (6) once the police stopped the car, they observed in plain view the school-sized backpack containing the gun on the front passenger seat.

Based on the totality of the circumstances, the officers had probable cause to believe that appellant possessed a firearm in the car. The information that appellant usually carried a gun and that the gun was not located on appellant's person, as well as appellant's movements in the car while driving, were consistent with his hiding the firearm. Since the police were tipped off by the victim of the alleged domestic assault about appellant's possession of the gun, an officer would reasonably believe that appellant may have used the gun in the domestic dispute. *See* Minn.Stat. § 609.2242, subd. 3 (2010) (assessing greater penalties if a "firearm was used in any way during the commission of [a domestic] assault"); *Chambers v. Maroney,* 399 U.S. 42, 47, 90 S.Ct. 1975, 1979, 26 L.Ed.2d 419 (1970) (concluding that officers had proba-

ble cause to search vehicle based on description of vehicle that witnesses saw immediately before and after a gas-station robbery).

We conclude that the search of the car satisfied the automobile exception to the warrant requirement, and the district court did not err in denying appellant's motion to suppress evidence of the firearm.

## III

The United States and Minnesota Constitutions guarantee the right to a jury trial in criminal cases. U.S. Const. amend. VI; Minn. Const. art. I, § 6; *see also* Minn. R.Crim. P. 26.01, subd. 1(1). "A defendant's right to a jury trial includes the right to be tried on each and every element of the charged offense." *State v. Wright,* 679 N.W.2d 186, 191 (Minn.App.2004), *review denied* (Minn. June 29, 2004). But a "defendant may agree to waive a jury determination of a particular element of the offense by stipulating to it." *State v. Hinton,* 702 N.W.2d 278, 281 (Minn.App.2005), *review denied* (Minn. Oct. 26, 2005). A defendant's stipulation must specifically waive his or her right to testify, to require favorable witnesses to testify in his or her defense, to have the state's witnesses testify, and to question the state's witnesses. Minn. R.Crim. P. 26.01, subd. 3. These waivers must be made by the defendant; waiver by defendant's counsel is insufficient. *Id.; Wright,* 679 N.W.2d at 191. The waiver of a right to a jury trial is reviewed de novo. *State v. Tlapa,* 642 N.W.2d 72, 74 (Minn. App.2002), *review denied* (Minn. June 18, 2002).

Appellant was charged with possession of a firearm by an ineligible person, an essential element of which is the person's ineligibility to possess a firearm. *See* Minn.Stat. § 624.713, subd. 1 (2010); 10A

*Minnesota Practice,* CRIMJIG 32.17 (2006) (listing elements). The district court accepted appellant's stipulation that he was ineligible to possess a firearm after the following exchange:

> COUNSEL: And he's agreed to that in order to stipulate to making him—that makes him ineligible to possess a firearm.

> THE COURT: All right. Is that correct, Mr. Craig?

> APPELLANT: Yes.

> THE COURT: Do you understand that you would have the right to make the State prove by proof beyond a reasonable doubt that you committed an offense that makes you ineligible? They'd have to do so in front of the jury. Usually they offer exhibits, a certified copy of the conviction. And that is one of the elements of the offense.

> . . . .

> THE COURT: ... Do you give up any right you have to make the State prove by proof beyond a reasonable doubt that you have a violation for Violation of Controlled Substance Law in the Fifth Degree as a felony—or do you have a conviction of Violation of Controlled Substance Law in the Fifth Degree as a felony within ten years of this charge, the gun possession charge?

> APPELLANT: If I say yes, that means that I did, you know.

> THE COURT: That you have a felony conviction for Violation of Controlled Substance Law, Fifth Degree, within ten years of today's date.

> APPELLANT: Yes.

> THE COURT: All right. Did you have enough time to talk to your lawyer about the fact that you could have made the State present evidence on that issue?

> APPELLANT: Yes.

THE COURT: Okay. I think that's sufficient.

No objection was made to the waiver.

The state concedes that appellant's attempt to stipulate to the prior-offense element at trial was likely inadequate to constitute a valid waiver under Minnesota law. We agree. But the state argues that, even if appellant's waiver was inadequate, it was harmless beyond a reasonable doubt. *See Washington v. Recuenco,* 548 U.S. 212, 218, 126 S.Ct. 2546, 2551, 165 L.Ed.2d 466 (2006) (stating that a strong presumption exists that most constitutional errors are subject to harmless-error analysis if criminal defendant had counsel and was tried by impartial adjudicator); *State v. Fluker,* 781 N.W.2d 397, 401 (Minn.App.2010) (stating that "[t]he Minnesota Supreme Court has generally agreed with the United States Supreme Court that most constitutional errors can be harmless" (quotation omitted)). Conversely, appellant argues that a harmless-error analysis is inappropriate because the district court's failure to secure a proper waiver constitutes structural error; therefore, his conviction should be reversed outright. *See Neder v. United States,* 527 U.S. 1, 8–9, 119 S.Ct. 1827, 1833, 144 L.Ed.2d 35 (1999) (stating that structural errors, which "necessarily render a trial fundamentally unfair" or affect the basic protections a criminal trial is supposed to ensure, require automatic reversal (quotation omitted)). The Minnesota Supreme Court has not yet addressed whether a district court's failure to adequately elicit a defendant's waiver of a jury determination of a stipulated-to element of the charged offense constitutes structural error. *Fluker,* 781 N.W.2d at 401.

▄ Appellant relies on *State v. Antrim,* 764 N.W.2d 67, 70 (Minn.App.2009), to support his argument that the district court's failure to elicit a valid waiver re-

quires automatic reversal. However, this case and others cited by appellant dealt with bench trials, stipulated-facts trials, and *Lothenbach* proceedings, in which the defendant waives his or her right to a jury trial in its entirety. *See Antrim,* 764 N.W.2d at 69 (trial on stipulated facts); *State v. Bunce,* 669 N.W.2d 394, 398 (Minn. App.2003) (*Lothenbach* proceeding), *review denied* (Minn. Dec. 16, 2003); *Tlapa,* 642 N.W.2d at 74 (bench trial). But this court has applied a harmless-error analysis to cases in which a defendant has stipulated only to certain elements of a charged offense and has otherwise received a full jury trial. *See, e.g., Fluker,* 781 N.W.2d at 403 (stipulation to two elements of charge of failure to register as predatory offender); *Hinton,* 702 N.W.2d at 281–82 (stipulation to two prior domestic violence convictions as elements of felony violation of order-for-protection charge); *Wright,* 679 N.W.2d at 190–91 (stipulation to one element of charge of first-degree criminal sexual conduct).

In *Fluker,* this court concluded that harmless-error analysis applied to the absence of a defendant's personal waiver of his right to a jury trial when stipulating to elements of an offense. *Fluker,* 781 N.W.2d at 403. This court concluded that a district court's failure to a elicit a valid jury-trial waiver from a defendant with regard to stipulated elements was not a "structural error" requiring automatic reversal, but rather a "trial error" subject to harmless-error review. *Id.* at 401–03. In *State v. Kuhlmann,* which was released soon after *Fluker,* this court reached a similar conclusion and determined that "plain-error review" applies where a defendant stipulates to elements of a crime but does not adequately waive the right to a jury trial on those elements. 780 N.W.2d 401, 405 (Minn.App.2010), *review granted* (Minn. June 15, 2010).[7] This court stated

7. The Minnesota Supreme Court may resolve

this issue in its review of *Kuhlmann.* The

that there are "deeply significant differences between the rights given up by foregoing a jury and agreeing to a bench trial or stipulated-facts trial and the rights given up when exercising the right to a jury trial and stipulating only to an offense element." *Id.* at 405–06. Because the defendant in *Kuhlmann*, like the appellant in this case, stipulated only to an element of the charged offense, and not to the waiver of his entire jury trial, the court recognized that he was still able to "compel witnesses to testify on [his] behalf, cross-examine the state's witnesses, challenge the state's other evidence, and argue the case to the jury." *Id.* at 406.

■■■■ We are compelled to follow *Fluker* and apply a harmless-error analysis to the district court's error. Under this test, "[a] constitutional error will be found prejudicial if there is a reasonable possibility that the error complained of might have contributed to the conviction." *Wright*, 679 N.W.2d at 191 (quotation omitted). "If, after reviewing the basis on which the jury rested its verdict, we conclude that the verdict was surely unattributable to the error, the error is harmless beyond a reasonable doubt." *Id.* (quotation omitted). The state bears the burden of establishing that the error was harmless beyond a reasonable doubt. *Id.*

■■■ Appellant stipulated to the existence of his prior felony conviction to establish that he was ineligible to possess a firearm. Appellant's prior felony conviction is an objective fact and would have easily been proved by public records, namely, a certified copy of his conviction. *See Fluker*, 781 N.W.2d at 402–03 (noting that nature and date of defendant's conviction were "objective and readily confirmed public judicial records"). Certified copies of convictions are admissible and prove the prior conviction. Minn.Stat. § 609.041; Minn. R. Evid. 803(8). The underlying facts of the element were not in dispute, and appellant's trial defense did not depend on his prior conviction. Furthermore, appellant stated that he wanted to keep the details of his prior offense from reaching the jury. *See Fluker*, 781 N.W.2d at 403 (stating that error was harmless when "appellant benefitted from the stipulation by keeping evidence regarding his 1994 conviction for criminal sexual conduct from being heard by the jury"). On this record, we conclude that the district court's failure to secure appellant's valid jury-trial waiver on the stipulated-to element was harmless error.

## IV

■■■ Evidence of a prior crime may be admitted to attack the credibility of a witness if the underlying conviction or release is less than ten years old and is punishable by more than one year in prison, and if the district court determines that the probative value of the evidence outweighs its prejudicial effect. Minn. R. Evid. 609(a)(1) and (b). Whether the probative value of a prior conviction outweighs its prejudicial effect depends on consideration of the following factors: (1) the impeachment value of the prior offense; (2) the date of the prior conviction and the defendant's subsequent history; (3) the similarity of the past crime to the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue. *State v. Jones*, 271 N.W.2d 534, 537–38 (Minn.1978). Evidentiary rulings rest in the discretion of the district court and are reviewed for a clear abuse of that discretion. *State v. Ihnot*, 575 N.W.2d 581, 584 (Minn.1998).

supreme court heard oral argument in *Kuhl-* *mann* on December 7, 2010.

Over appellant's objection, the district court ruled that appellant's prior 2008 conviction of fifth-degree controlled substance crime could be used by the prosecution to impeach appellant if he testified. Appellant's conviction was punishable by more than one year of incarceration and occurred within the last ten years. Thus, we examine whether the probative value of the evidence of the conviction outweighs its prejudicial effect. Appellant argues that the district court erred because it did not apply *all* of the *Jones* factors in considering the admissibility of the prior conviction and that a complete application establishes that the probative value of evidence of his prior conviction does not outweigh its prejudicial effect.

The state concedes that the district court erred by not addressing all of the *Jones* factors in its ruling, but it argues that the error was harmless because a reviewing court may independently apply the factors and conclude that the prior conviction is admissible. *State v. Swanson,* 707 N.W.2d 645, 655 (Minn.2006); *see also State v. Vanhouse,* 634 N.W.2d 715, 719 (Minn.App.2001) (reviewing *Jones* factors and finding harmless error after district court failed to make a record of its *Jones* analysis), *review denied* (Minn. Dec. 11, 2001). Accordingly, we address each *Jones* factor.

### Impeachment value

▆▆▆▆▆ "Convictions for possession of controlled substances do not directly relate to veracity of a defendant. But impeachment by a prior conviction aids the jury by allowing it to see the whole person and thus to judge better the truth of [the

defendant's] testimony." *State v. James,* 638 N.W.2d 205, 211 (Minn.App.2002) (quotation and citation omitted), *review denied* (Minn. Mar. 27, 2002). "[T]he fact that a prior conviction did not directly involve truth or falsity does not mean it has no impeachment value." *State v. Gassler,* 505 N.W.2d 62, 67 (Minn.1993). The supreme court has concluded that Minn. R. Evid. 609 "clearly sanctions the use of felonies ... not directly related to truth or falsity for purposes of impeachment, and thus necessarily recognizes that a prior conviction, though not specifically involving veracity, is nevertheless probative of credibility." *State v. Brouillette,* 286 N.W.2d 702, 708 (Minn.1979). And this court has previously found that admission of previous convictions of controlled substance crimes for impeachment purposes is proper. *See State v. Williams,* 771 N.W.2d 514, 518–19 (Minn.2009) (declining to abandon the "whole person" test and determining that a prior controlled-substance offense was admissible to impeach the defendant, who had been charged with illegally possessing a firearm, assault, and robbery because it allowed the jury to better assess the truth of defendant's testimony).

In light of this well-established precedent, appellant's prior conviction had significant impeachment value, and this factor supports admission of the evidence.[8]

### Date of conviction

Appellant's controlled substance offense occurred in 2007, and he pleaded guilty to it in 2008. Appellant does not disagree that this factor weighs in favor of admissibility.

---

8. Appellant points us to Michigan caselaw for an example of a "standard for admitting prior conviction evidence when the evidence does not involve dishonesty." *See People v. Allen,* 429 Mich. 558, 420 N.W.2d 499 (1988). But the standard for admission of prior convictions for impeachment purposes is clear under Minnesota law, and appellant provides no compelling reasons for us to consider, let alone adopt, the Michigan standard. Thus, we decline to further address appellant's discussion of Michigan caselaw.

### Similarity of past conviction

Appellant also concedes that this factor weighs in favor of admissibility. *See Jones*, 271 N.W.2d at 538 (stating that the more similar a past crime is to the charged crime, the greater reason for not permitting use of the prior crime to impeach); *Williams*, 771 N.W.2d at 519 (concluding that the district court did not abuse its discretion in admitting prior drug convictions in trial on charges of illegal firearm possession, assault, and robbery, although the prior convictions did not involve violence).

### Importance of appellant's testimony

If the admission of a prior conviction prevents a jury from hearing a defendant's version of events, and that testimony is important to the jury's determination, then this factor weighs against admission of the evidence. *Gassler*, 505 N.W.2d at 67. Here, despite the admission of his prior conviction for purposes of impeachment, appellant chose to testify. Because the jury heard appellant's version of events, we conclude that this factor weighs in favor of admissibility.

### Centrality of credibility issue

If a defendant's credibility is a central issue at trial, "a greater case can be made for admitting the impeachment evidence, because the need for the evidence is greater." *Ihnot*, 575 N.W.2d at 587 (quotation omitted). Appellant argues that his credibility was not central to the case because the jury was not asked to make a choice between his credibility and that of another testifying witness. But appellant was the sole witness on behalf of the defense, and he alone asked the jury to believe that he did not know that there was a gun in his backpack. Appellant's testimony, therefore, provided the main evidence for his side of the story, making the admission of the impeachment evidence necessary. Appellant also argues that the prior-convic-

tion evidence was prejudicial because other evidence admitted at trial, including the location of the firearm in the car, the inconclusive DNA evidence, and the exculpatory fingerprint evidence, allowed the jury to evaluate the truthfulness of appellant's testimony. But regardless of what other circumstantial evidence the state presented, appellant chose to testify, thus opening the door to the state's use of impeachment evidence.

Finally, appellant argues that the district court failed to give a cautionary instruction to the jury when the prior-conviction evidence was received. But the district court did instruct the jury as to the appropriate use of prior-conviction evidence in its final instructions. *See State v. Bissell*, 368 N.W.2d 281, 283 (Minn.1985) (failure to give cautionary instruction at time evidence was admitted "clearly was not prejudicial since the court did give such an instruction as part of its final instructions to the jury and since no one suggested that the evidence should be used for any purpose other than determining defendant's credibility as a witness").

We conclude that all of the *Jones* factors weigh in favor of admissibility; thus, the district court did not commit reversible error by admitting evidence of appellant's prior conviction for impeachment purposes.

### V

A defendant may impeach the credibility of a non-testifying witness if the witness's hearsay statements are introduced at trial. Minn. R. Evid. 806. This rule allows a party to attack the credibility of a hearsay declarant by evidence that would otherwise be admissible had the declarant testified. *Id.* Appellant argues that exclusion of evidence of the prior convictions of S.Y., the complainant, for im-

peachment purposes, violated his right to due process. Due process requires that every defendant be "afforded a meaningful opportunity to present a complete defense." *State v. Richards*, 495 N.W.2d 187, 191 (Minn.1992) (quotation omitted). When a criminal defendant alleges a violation of his constitutional rights because of an evidentiary ruling, we review that ruling for an abuse of discretion. *State v. Tovar*, 605 N.W.2d 717, 722 (Minn.2000).

■ S.Y. was not available to testify at appellant's trial. A Mounds View police investigator testified that he had contact with S.Y. to discuss the assault and that he made futile efforts to locate S.Y. prior to trial. On redirect examination, he was asked, without objection, whether S.Y. had told him about the nature of her relationship with appellant. The investigator responded, "That she did. You know, I think that they—if I remember correctly, that they had been involved, boyfriend, girlfriend." No further questions were asked on this point or about anything else discussed between the investigator and S.Y.

After the prosecution rested its case, the defense moved to admit evidence under Minn. R. Evid. 806 attacking the credibility of S.Y.'s statement, specifically, S.Y.'s prior burglary convictions in 2004, 2006, and 2007. The district court denied the motion, ruling that the prior-conviction evidence was not relevant. The district court asked defense counsel several times why S.Y.'s characterization of the relationship was relevant, especially since this was not a domestic-assault case. Defense counsel responded that the fact that S.Y. was lying on that point gave her motive to conceal the firearm without appellant's knowledge.

Appellant's position is not persuasive. We first note that appellant himself testified that he and S.Y. had been together for nine years; that they had a five-year-old daughter together; that he had been staying with S.Y. on and off, even though they had "broken up"; that they had been together all of that evening; and he kept personal possessions at S.Y.'s apartment. Furthermore, the investigator testified that S.Y.'s characterization of the relationship was that appellant and S.Y. *"had been involved"* with each other, from which the jury could have inferred a past relationship and not necessarily a current one, as appellant now contends.

Appellant asserts that his defense at trial was that S.Y. had motive to and did conceal the firearm in the backpack without his knowledge. But as the state argues, impeachment of S.Y.'s statement was not necessary for appellant to advance a defense that S.Y. had "set him up" out of spite over a lost relationship. Although appellant submits that prior-conviction evidence "certainly [would] have been admissible for impeachment purposes" had S.Y. testified, in fact, S.Y. did not testify, and the only statement made by S.Y. that was admitted at trial through another witness was that she characterized her relationship with appellant as having been "involved" as boyfriend and girlfriend. No hearsay evidence was admitted via the investigator that S.Y. specifically accused appellant of possessing the firearm. Therefore, there was no relevant hearsay statement admitted that created an opportunity for prior-conviction impeachment, and the district court did not err in excluding such evidence.

■ Further, even if we were to conclude that the district court erred by excluding S.Y.'s prior convictions, that error was harmless because it is likely that the jury would have reached the same verdict had the impeachment evidence been admitted. *See State v. Valtierra*, 718 N.W.2d 425, 435 (Minn.2006) (stating that in order to warrant new trial, evidentiary error

must have "substantially influence[d] the jury's decision" (quotation omitted)). It is unlikely that the jury based its verdict on whether appellant and S.Y. were boyfriend and girlfriend, which had little bearing on appellant's defense at trial that S.Y. had motive to and did conceal the firearm in the backpack without appellant's knowledge. More probative was the fact that the gun contained DNA evidence that excluded 98.8% of the general population, but not appellant. And evidence was also introduced that the police observed appellant making movements in the vehicle, which reasonably led them to believe appellant was attempting to hide the gun in his backpack before he was stopped. We conclude that the district court did not err by denying appellant's motion to introduce evidence of S.Y.'s prior felony convictions for impeachment purposes and that, even if it amounted to error, it was harmless.

## VI

After a pretrial hearing, the district court found appellant financially eligible for public-defender representation and appointed the public defender. At sentencing, the district court noted that appellant had been in custody for 316 days pending trial and imposed an executed 60–month sentence and a $75 public defender copayment. Appellant argues that the imposition of the copayment should be reversed because the district court did not make specific findings regarding his ability to pay under Minn.Stat. § 611.20, subd. 2, and Minn. R.Crim. P. 5.04, subd. 5.

■ A defendant must pay $75 for public-defender services unless that copayment is waived by the district court. Minn.Stat. § 611.17(c) (2010); *see also* Minn.Stat. § 645.44, subd. 16 (2010) ("'Shall' is mandatory."). The statute does not require specific findings regarding the defendant's financial circum-

stances. Under Minn.Stat. § 611.20, a partial payment *in addition* to the mandatory $75 public-defender copayment may be imposed if the district court determines that the defendant is financially able to make a partial payment for public-defender services. Minn.Stat. § 611.20, subd. 2. Here, the district court did not order partial payment under section 611.20, subdivision 2, and therefore was not required to make specific findings with respect to appellant's financial circumstances. The district court properly applied section 611.17(c) to order appellant to pay a mandatory $75 copayment for public-defender services.

## DECISION

Minn.Stat. § 624.713, subd. 1(2), which prohibits a person previously convicted of a "crime of violence" from possessing a firearm, does not violate the Second Amendment to the United States Constitution as applied to appellant, who has a previous felony conviction for controlled substance crime.

Additionally, the automobile exception to the warrant requirement applies under these circumstances; the district court's error in accepting appellant's constitutionally inadequate waiver-by-stipulation to the prior-offense element of the charged offense was harmless; the district court properly allowed into evidence appellant's prior conviction and did not abuse its discretion by refusing to allow into evidence S.Y.'s previous convictions; and the imposition of the public-defender copayment was authorized by statute.

**Affirmed.**