*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0847**

State of Minnesota,
Respondent,

vs.

Richard Allen Altman,
Appellant.

**Filed February 6, 2017
Affirmed
Larkin, Judge**

Olmsted County District Court
File No. 55-CR-15-2803

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James P. Spencer, Assistant County Attorney, Rochester, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jessica Merz Godes, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Connolly, Presiding Judge; Larkin, Judge; and Reyes, Judge.

UNPUBLISHED OPINION

**LARKIN**, Judge

Appellant challenges his conviction of felony test refusal, arguing that his guilty plea was inaccurate, and therefore invalid, because it lacked an adequate factual basis. We affirm.

**FACTS**

In April 2015, respondent State of Minnesota charged appellant Richard Allen Altman with felony driving while impaired (DWI), felony test refusal, and gross misdemeanor driving after cancellation. The complaint alleged that on April 28, 2015, at approximately 8:33 p.m., the Rochester Police Department dispatched officers to the area of Rochester Community and Technical College based on a report that Altman was harassing a woman and following her in a red Dodge vehicle while she walked on foot. Officer Anthony Teal of the Rochester Police Department observed a red pickup truck going through roundabouts on UCR Drive. Officer Teal followed the truck onto 8-1/2 Street where he observed the truck moving quickly. Officer Teal was advised that Altman had active warrants, had a canceled license, and had been hostile towards the police in the past. Officer Teal stopped the vehicle.

When Altman opened the door to his truck, Officer Teal smelled a strong odor of an alcoholic beverage emanating from Altman. Another officer at the scene, Jeffrey Stobbs, advised Altman that he was under arrest after confirming that there was an active warrant for his arrest. Officer Stobbs observed that Altman had red, bloodshot and watery eyes, slurred speech, was talkative and belligerent, and smelled strongly of alcohol. The

officers did not administer field sobriety tests because of Altman's prior combative behavior with law enforcement. Officer Stobbs transported Altman to jail where Altman met Officer Gallion. Officer Gallion immediately noticed that Altman had bloodshot and watery eyes, slurred speech, gave off a strong odor of alcohol, and was verbally abusive and hostile. Officer Gallion read Altman an implied-consent advisory and offered him a breath test. Altman requested an opportunity to speak to an attorney. Later, Altman stated that his attorney had advised him not to take the breath test, and he refused the test.

Altman moved to dismiss the charges, arguing that law enforcement did not have probable cause to invoke the implied-consent procedure. After a hearing, the district court denied Altman's motion to dismiss.

On February 12, 2016, the district court held a plea hearing. Altman's attorney stated that Altman and the state had agreed to a plea agreement whereby Altman would plead guilty to the test-refusal charge, the state would recommend that he receive the "low end of the box" at sentencing, and the remaining charges would be dismissed. During this plea hearing, Altman's attorney questioned him and offered the following testimony in support of his guilty plea:

> Q:  Okay. So essentially when you got back to the station, that's sort of when the investigators developed this idea that you might have been operating a motor vehicle in violation of Minnesota statutes; correct?
> A:  Right.
> Q:  Now, you and I challenged whether or not they actually had probable cause to invoke what's called the implied consent process; correct?
> A:  Right.
> Q:  And you would acknowledge that they did read you the entire implied consent advisory; correct?

3

A:  Right.
Q:  But we challenged whether or not they even had a right to do that and, in essence, ask you to take a breath test; correct?
A:  Right.
Q:  And as a matter of law the Court decided—or I suppose as a matter of fact at least—the Court decided that there was probable cause based on their observations that they testified to at a contested hearing that you had watery and bloodshot eyes, your speech was slurred, and you were acting belligerent, in their opinion, that you smelled strongly of alcohol, and requested to be taken to detox; you understand that that judge has already decided—
A:  Yeah.
Q:  —that they had adequate grounds to invoke the implied consent; correct?
A:  Yeah.

As Altman and his attorney attempted to establish a factual basis for the plea, the prosecutor interrupted and asked to confer with Altman's attorney. After conferring, the prosecutor noted that Minnesota's test-refusal statute was under challenge and was "going to the Supreme Court." Following a recess, the prosecutor stated:

> I guess my position is going to be I would ask for—I guess put this on for a plea hearing sometime next week if [Altman] wants to go forward with the test refusal, otherwise I'm happy to accept a plea to the actual DWI today with the same agreement, the 51 months. But given the fact that the statute is being challenged for its constitutionality by the U.S. Supreme Court, I'd—and again, I'm fielding this as someone else's attorney today, so I guess I'm not comfortable going forward with that plea.

Altman's attorney asked the district court to "continue accepting [Altman]'s plea at that hearing, complete the factual basis, and proceed to sentencing as was originally proposed." The district court rescheduled the plea hearing to February 19.

4

On February 19, the district court held another plea hearing, at which Altman entered a guilty plea to the criminal test-refusal charge. During this plea hearing, the district court questioned Altman as follows:

> Q: Okay, tell me what happened then. Had you been consuming an alcoholic beverage?
> A: No.
> Q: Okay. What was the reason they stopped you?
> A: I got into an argument with my old lady and told her to get out and walk home.
> Q: Okay. And did the officer then accuse you of drinking, is that what happened?
> A: No, she called 911 when she was walking across the soccer field. I was on my way home.
> . . . .
> A: And then they found out I had a DOC warrant. That's when they pulled me over.
> Q: Okay. And after you got pulled over, the officer accused you of drinking?
> A: Nope. They didn't accuse me of that until I got here.
> Q: So you got what?
> A: Until I got to the ADC, until I got to jail.
> Q: Okay. And then they said—they accused you of that, is that right?
> A: When I got here?
> Q: Yes.
> A: Yes.
> Q: And then they offered you some sort of test at that time?
> A: The breath test.
> Q: The breath test. And what did you tell them?
> A: No.
> Q: And had they read you what we call the Implied Consent?
> A: Oh, yeah.
> Q: Did they? And is that when you told the officer you weren't going to take the test, is that right?
> A: Right.

The district court found that there was an adequate factual basis for the plea, accepted the plea, adjudicated Altman guilty, convicted him of felony test refusal, and

5

sentenced him to serve a 51-month prison term pursuant to the parties' plea agreement. This appeal follows.

## DECISION

Altman argues that his guilty plea to felony test refusal was inaccurate and therefore invalid because it lacked an adequate factual basis.

A court must allow a defendant to withdraw a guilty plea if it is necessary to correct a manifest injustice. Minn. R. Crim. P. 15.05, subd. 1. "A manifest injustice exists if a guilty plea is not valid." *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). To be valid, a guilty plea must be "accurate, voluntary, and intelligent." *Perkins v. State*, 559 N.W.2d 678, 688 (Minn. 1997). "A defendant bears the burden of showing his plea was invalid." *Raleigh*, 778 N.W.2d at 94. When "the factual basis of a guilty plea is challenged on direct appeal, this court conducts a *de novo* review by reviewing the record of the plea hearing, which should reveal the factual basis." *State v. Johnson*, 867 N.W.2d 210, 216 (Minn. App. 2015), *review denied* (Minn. Sept. 29, 2015).

"The main purpose of the accuracy requirement is to protect a defendant from pleading guilty to a more serious offense than he could be convicted of were he to insist on his right to trial." *State v. Trott*, 338 N.W.2d 248, 251 (Minn. 1983). Thus, a plea must "be supported by a proper factual basis[;] . . . there must be sufficient facts on the record to support a conclusion that [the] defendant's conduct falls within the charge to which he desires to plead guilty." *State v. Iverson*, 664 N.W.2d 346, 349 (Minn. 2003) (quotation omitted).

Altman pleaded guilty to criminal test refusal under Minn. Stat. § 169A.20, subd. 2 (2014), which provides that "it is a crime for any person to refuse to submit to a chemical test of the person's blood, breath, or urine" required under Minnesota's implied-consent statute. The implied-consent statute provides:

> [A chemical] test may be required of a person when an officer has probable cause to believe the person was driving, operating, or in physical control of a motor vehicle in violation of section 169A.20 (driving while impaired), and one of the following conditions exist:
> (1) the person has been lawfully placed under arrest for violation of section 169A.20 or an ordinance in conformity with it;
> (2) the person has been involved in a motor vehicle accident or collision resulting in property damage, personal injury, or death;
> (3) the person has refused to take the screening test provided for by section 169A.41 (preliminary screening test); or
> (4) the screening test was administered and indicated an alcohol concentration of 0.08 or more.

Minn. Stat. § 169A.51, subd. 1(b) (2014).

Altman argues that the record does not establish that "(1) a peace officer had probable cause to believe that [he] drove, operated, or was in physical control of a motor vehicle while under the influence of alcohol, and (2) any of the conditions listed in Minn. Stat. § 169A.51, subd. 1(b) existed." As to the second element, the most relevant condition in this case is a lawful arrest for DWI. *Id.*, subd. 1(b)(1).

The test for probable cause is "[w]hether the officers in the particular circumstances, conditioned by their own observations and information and guided by the whole of their police experience, reasonably could have believed that a crime had been committed by the

person to be arrested." *State v. Moorman*, 505 N.W.2d 593, 598 (Minn. 1993) (quotation omitted). "Whether the arresting officer's actions were reasonable is an objective inquiry; it does not depend on the officer's subjective frame of mind at the time of the arrest." *Id.*; *see also State v. Koppi*, 798 N.W.2d 358, 360 (Minn. 2011) ("The district court's jury instruction for refusal to submit to chemical testing was erroneous because the instruction given to the jury articulated an incorrect, subjective standard of probable cause.").

At the first plea hearing, Altman acknowledged that the district court had previously determined that the officers' observations of his condition at the time of his arrest established probable cause to believe he had been driving while impaired and, therefore, grounds to invoke the implied-consent process. At the second hearing, Altman admitted that he had been driving a vehicle, the police stopped him, the police took him to jail, and when they arrived at the jail, the police accused him of drinking. These admissions adequately establish that the police had probable cause to believe Altman had been driving while impaired and that Altman was lawfully arrested for driving while impaired.

Altman argues that his "acknowledgment at a hearing other than his guilty plea hearing that the district court found probable cause . . . cannot establish the factual basis for [his] guilty plea." Essentially, Altman suggests that we should ignore his proffered factual basis at the first plea hearing because the plea was not accepted until the second hearing. For the reasons that follow, we decline to do so.

Altman began to provide a factual basis for his guilty plea at the first hearing. Before he could finish, the prosecutor asked to continue the plea hearing. The district court rescheduled the plea hearing, and Altman finished providing his factual basis at the second

8

hearing. Altman never indicated a desire to withdraw from the plea agreement and exercise his right to a trial. In fact, Altman's attorney asked the district court to go forward with Altman's guilty plea and proceed to sentencing at the first hearing. Moreover, the prosecutor never withdrew the plea offer. He merely asked to "put this on for a plea hearing sometime next week if [Altman] wants to go forward with the test refusal." Given the circumstances, the only reasonable way to construe the second plea hearing is as a continuation of the first plea hearing. Thus, the record from both plea hearings informs our determination whether the factual basis for Altman's plea was adequate.

Altman also argues that because the state's brief only addresses the first contested element, the state should "be deemed to have forfeited any argument that the factual basis [for the second element] is adequate." Altman suggests that this court should therefore conclude that the factual basis for the second element was inadequate. Altman relies on *State v. Porte*, where this court held that the state's failure to assert a harmless-error argument generally constitutes waiver of the harmless-error issue. 832 N.W.2d 303, 312-13 (Minn. App. 2013).

Altman's argument is unavailing because in a harmless-error context, the state has the burden to prove that an established error is harmless. *State v. Craig*, 807 N.W.2d 453, 468 (Minn. App. 2011) (noting that under the harmless-error analysis, the "state bears the burden of establishing that [an] error was harmless beyond a reasonable doubt"), *aff'd*, 826 N.W.2d 789 (Minn. 2013). Here, Altman has the burden to prove that his plea was invalid; the state does not have to prove that it was valid. *See Raleigh*, 778 N.W.2d at 94. Because the state does not have a burden of proof, the state's lack of briefing regarding the second

9

element is irrelevant. Indeed, if the state had not submitted a brief, we would still review the plea record de novo and determine whether the plea was valid. *See* Minn. R. Civ. App. P. 142.03 (providing that if the respondent fails to file a brief, the case shall be determined on the merits).

In conclusion, Altman has not met his burden to establish that his guilty plea was invalid. The record from the initial and continued plea hearings adequately establish that the police had probable cause to believe Altman had been driving while impaired and that Altman was lawfully arrested for DWI. We do not have any concern that Altman was convicted of a more serious offense than he could have been if he had gone to trial. We therefore affirm.

**Affirmed.**

10